UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------X

FIRST KEYSTONE CONSULTANTS, INC.
ROBERT H. SOLOMON and
JANE SOLOMON

        Plaintiffs,

     -against-

SCHLESINGER ELECTRICAL
CONTRACTORS, INC.

        Defendant.

---------------------------------X

**MEMORANDUM & ORDER**

10-CV-696(KAM)(SMG)

**KIYO A. MATSUMOTO, United States District Judge:**

      Presently before the court is a motion filed by

defendant Schlesinger Electrical Contractors, Inc. ("SEC" or

"defendant")[1] seeking to dismiss the first, second, and third

causes of action of plaintiffs First Keystone Consultants, Inc.

("FKC"), Robert H. Solomon and Jane Solomon (together, the

"Solomons," and collectively with FKC, "plaintiffs").[2] For the

---

[1] The Complaint also asserted claims against J.P. Morgan Chase Bank, N.A.,
s/h/a JPMorgan Chase & Co. ("Chase Bank") and Jacob Levita ("Levita"), a
principal officer of SEC. (ECF No. 1, Complaint filed 2/17/2010 ("Compl.")
¶¶ 10-12, 24-25, 29, 31-33.) On December 15, 2010, pursuant to an agreement
among the parties, the court dismissed with prejudice all claims against
defendant Chase Bank – including plaintiff's fourth cause of action and
defendant's first and second cross-claims – after Chase Bank deposited
$598,716.14 with the registry of the Clerk of this court. (Order Granting
Motion to Dismiss, dated 12/15/2010; ECF No. 57, Clerk's Judgment dated
12/15/2010.) On January 3, 2011, pursuant to a stipulation by the parties,
all claims against Levita were dismissed with prejudice. (ECF No. 61,
Stipulation of Dismissal, dated 12/28/2010; Order dated 1/3/2011.)

[2] SEC asserts that if the court dismisses plaintiffs' first, second, and third
causes of action, dismissal of defendant's sixth, seventh, eighth, and ninth
counterclaims is also appropriate. (See ECF No. 100-28, Memorandum of Law of
Defendant Schlesinger Electrical Contractors, Inc. in Support of Motion to
Dismiss Plaintiffs' First, Second and Third Causes of Action, dated 6/30/2011

reasons set forth below, defendant's motion to dismiss is granted.

**BACKGROUND**

The following facts are drawn from the Complaint, the parties' submissions in connection with the instant motion, and the documents incorporated by reference therein.[3] The court summarizes below only those facts deemed necessary to an understanding of the issues involved in this motion.

## I.    The Parties and the Agreements

Plaintiff FKC is a Pennsylvania corporation authorized to do business in New York.  (Compl. ¶ 8.)  Plaintiffs Robert and Jane Solomon, residents of Florida, are principal officers of FKC, and Jane Solomon is its sole shareholder.[4] (*Id.* ¶¶ 8-9.)

---

("Def. Mem.") at 23-24; ECF No. 101-3, Reply Memorandum of Law of Defendant Schlesinger Electrical Contractors, Inc. in Support of Motion to Dismiss Plaintiffs' First, Second and Third Causes of Action, dated 7/27/2011 ("Def. Reply") at 7.)

[3] The parties inappropriately assume the court's familiarity with the facts of the case and the longstanding relationships and history of multiple lawsuits, cross-claims, and counterclaims among the parties.  Further, the parties' submissions are convoluted and replete with excess verbiage and inappropriate *ad hominem* attacks.  To the extent that certain documents referred to in the parties' submissions have not been submitted or certain facts have not been adequately presented, the court has looked for background and clarification to the records in the cases before the Honorable Duane A. Hart of New York Supreme Court, Queens County, and before the Honorable Richard J. Holwell and the Honorable Andrew L. Carter of the United States District Court for the Southern District of New York.  *See First Keystone Consultants, Inc. v. DDR Constr. Servs.*, Index No. 27095/2005 (N.Y. Sup. Ct. Queens Cnty.); *DDR Constr. Servs., Inc. v. Siemens Indus., Inc.*, No. 09-CV-9605 (S.D.N.Y.).  The court has analyzed the facts mindful of the clear presumption in favor of retaining jurisdiction.

[4] The court finds that plaintiffs have satisfied their burden of establishing that the court has subject matter jurisdiction, based on the parties' diversity, pursuant to 28 U.S.C. § 1332, (*see* ECF No. 141, [Solomons'] Response to Order to Show Cause, filed 2/29/2012), notwithstanding evidence

Defendant SEC is a New York corporation. (*Id.* ¶ 10.) Jacob Levita ("Levita," and together with SEC, the "SEC defendants"), a New York resident, is a principal officer of SEC. (*Id.* ¶¶ 10-11.)

In or about August 2004, SEC and non-party Siemens Energy & Automation, Inc. ("SEA"), a Delaware corporation that provided electrical, engineering, and automation solutions in the construction industry, organized a limited liability company under the name Schlesinger-Siemens Electrical, LLC ("SSE"). (*See id.* ¶ 15; *id.* Ex. E, Amended and Restated Operating Agreement of Schlesinger-Siemens LLC, dated 10/17/2005 ("Am. Op. Agmt."); Kalish Decl. Ex. B, Verified Complaint, dated 12/16/2005 ("FKC Queens Compl.") ¶ 10.) *See also First Keystone Consultants, Inc. v. DDR Constr. Servs.*, 901 N.Y.S.2d 906 (N.Y. Sup. Ct. Queens Cnty. 2009); *DDR Constr. Servs., Inc. v. Siemens Indus., Inc.*, 770 F. Supp. 2d 627, 635-37 (S.D.N.Y. 2011). SSE was authorized to bid on and perform certain projects involving water treatment and facility electrical upgrades (the "Projects") for the New York City Department of Environmental Protection ("NYCDEP"). (*See* Compl. ¶¶ 13-15; *id.* Ex. E, Am. Op.

---

in the record that the Solomons filed a subsequent state action that was removed to the United States District Court for the Eastern District of New York, alleging that they are residents of Queens, New York, (*see* ECF No. 100, Declaration of Melvin J. Kalish in Support of Motion to Dismiss, dated 6/30/2011 ("Kalish Decl.") Ex. S, Letter to the Hon. Dora L. Irizarry and Chief Magistrate Judge Steven M. Gold, dated 4/25/2011; *see also* Summons with Notice, *Solomon v. Siemens Indus., Inc.*, Index No. 4636/2011 (N.Y. Sup. Ct. Queens Cnty. Feb. 23, 2011)).

Agmt. ¶ 1.3; ECF No. 101, Reply Declaration of Melvin J. Kalish in Support of Motion to Dismiss, dated 7/27/2011 ("Kalish Reply Decl.") Ex. T, Short Form Order, *First Keystone Consultants, Inc. v. DDR Constr. Servs.*, Index No. 27095/2005, dated 11/26/2008 ("Queens P.I."), at 2.) *See also First Keystone*, 901 N.Y.S.2d at 906; *DDR Constr.*, 770 F. Supp. 2d at 636.  SEC and SEA agreed to split SSE profits in equal halves, but SEA retained control over SSE with a 51 percent interest, as compared to SEC's 49 percent interest.  (*See* Compl. ¶¶ 15, 23; *id.* Ex. E, Am. Op. Agmt. ¶¶ 3.2, 8.3(a)(iv).)  *See also DDR Constr.*, 770 F. Supp. 2d at 636.

On or about August 20, 2004, SEC, FKC, and non-party DDR Construction Services, Inc. ("DDR"), a New Jersey corporation that provides consulting and other services to entities in the construction industry, entered into a Pre-Bidding and Joint Venture Agreement under the name SFD Associates (the "2004 SFD Joint Venture") through which those three entities agreed to assist in the bidding and performing of SEC's part of the Projects, and split in equal thirds any profits SEC earned from the Projects.[5]  (Kalish Decl. Ex. A, Pre-

---

[5] The NYCDEP Projects successfully bid upon by SSE in affiliation with the 2004 SFD Joint Venture included, *inter alia*, (i) Contract 26W-12E for the 26th Ward Water Pollution Control Plant; (ii) Contract WI-79E for the Wards Island Water Pollution Control Plant; (iii) Contract P-O-878-E for the Wards Island BNR Technology Upgrade ((i), (ii), and (iii) collectively, the "26th Ward Projects"); (iv) Contract CRO 312E-1 for the Croton Water Treatment Plant in Van Cortland Park; and (v) Contract CRO 312E-2 for the Croton Water

4

Bidding and Joint Venture Agreement of SFD Associates, dated 8/20/2004 ("2004 SFD JV"); Kalish Decl. Ex. B, FKC Queens Compl. ¶¶ 4, 12; Kalish Decl. Ex. E, First Amended Verified Answer to Verified Complaint and Amended Counterclaim, dated 11/19/2007 ("DDR Queens Counterclaims against FKC") ¶¶ 42-56.) *See also First Keystone*, 901 N.Y.S.2d at 906; *DDR Constr.*, 770 F. Supp. 2d at 635, 637. Pursuant to the 2004 SFD Joint Venture, SEC, FKC, and DDR agreed to distribute equally all profits "[u]pon completion of the Principal Contract and after paying or providing for the payment of (a) all known costs and expenses and (b) reserves for such unsettled claims, overruns and other contingencies as all the parties reasonably agree in their discretion, to be necessary and after repaying all sums advanced for working capital . . . ." (Kalish Decl. Ex. A, 2004 SFD JV ¶ 21.) A rider to the 2004 SFD Joint Venture agreement further provided that each of the joint venturers had a one-third interest in SEC's interest in the Projects, and in all profits, gains, and losses realized or sustained therefrom. (Kalish Decl. Ex. A, 2004 SFD JV Rider ¶ 4.) On May 4, 2005 FKC, SEC, and DDR executed another rider to the 2004 SFD Joint Venture,

---

Treatment Plant in Van Cortland Park ((iv) and (v) collectively, the "Croton Projects"). (*See* Compl. ¶¶ 13-14; Compl. Ex. B, Pre-Bidding and Joint Venture Agreements of SFD Associates, dated 10/31/2006 ("2006 SFD JV"); Kalish Decl. Ex. B, FKC Queens Compl. ¶ 15; Kalish Decl. Ex. H, Verified Answer to Third Party Complaint and Counterclaims against SEC and Levita, dated 2/9/2009 ("FKC Queens Counterclaims") ¶ 654.)

pursuant to which they agreed that the 2004 SFD Joint Venture would bid on Contract 26W-12E for the 26th Ward Water Pollution Control Plant (the "26th Ward Project"). (Kalish Decl. Ex. B, FKC Queens Compl. ¶¶ 15-16; Kalish Decl. Ex. A, 2004 SFD JV, Amendment to Rider dated 5/4/2005.)

According to plaintiffs, on August 29, 2005, FKC and SEC executed a letter agreement (the "August 29, 2005 Agreement") providing that upon award of the 26th Ward Project to SSE, FKC was to receive "$1,500 per week expenses from the [2004 SFD Joint Venture] charged as a job cost" and "$3,000 per week draw against First Keystone's share of the profits" from the 2004 SFD Joint Venture. (Compl. Ex. G, Letter from Robert Solomon to Jacob Levita, dated 8/29/2005 ("8/29/2005 Agmt."); Kalish Decl. Ex. H, FKC Queens Counterclaims ¶ 682.) The NYCDEP awarded SSE the 26th Ward Project on or about August 31, 2005. (Kalish Decl. Ex. G, Verified Answer of Third-Party Defendants Schlesinger and Levita and Counterclaims Against Third Party Plaintiffs and Plaintiffs, dated 1/12/2009 ("SEC Queens Counterclaims") ¶¶ 344, 431, Exhibit D.)

On October 17, 2005, SEC and SEA executed an Amended and Restated Operating Agreement of SSE (the "2005 Amended Operating Agreement"), which provided that SSE was to "engage in the business of bidding upon, and, if the successful bidder, negotiating, executing and performing . . . projects for the

[NYCDEP] . . . ." (Compl. Ex. E, Am. Op. Agmt. ¶ 1.3.)
Pursuant to the 2005 Amended Operating Agreement, SEC's role
included estimating installation materials and other resource
requirements, demolition and removal of equipment, interfacing
with local unions to provide trade labor, and obtaining all
permits and services necessary to perform the Projects. (Compl.
¶ 15; Compl. Ex. E, Am. Op. Agmt. ¶ 8.2(b).) SEA's role was to
provide equipment and financial administrative services,
including distributing payments, invoicing the NYCDEP, preparing
tax forms, and creating financial reports. (Compl. ¶ 15; Compl.
Ex. E, Am. Op. Agmt. ¶ 8.2(c).) The 2005 Amended Operating
Agreement explicitly stated, "the parties do not intend to
confer any benefit under this Agreement on anyone other than the
parties . . . ." (Compl. Ex. E, Am. Op. Agmt. ¶ 18.4.)

On or about January 30, 2006, SEC and SSE entered into
a Support Services Agreement (the "January 30, 2006 SSA"),
pursuant to which SEC agreed to supply certain administrative
support services to SSE to facilitate the operation of SSE's
business of bidding on and performing the Projects. (Compl. Ex.
A, Support Services Agreement, dated 1/30/2006 ("1/30/2006 SSA")
¶¶ 1.1, 2.1.) Among the services SEC agreed to provide SSE were
the business consulting services of FKC, for which FKC was to be
paid a fee not to exceed $156,000 per year. (*Id.* Exhibit A;
Compl. ¶¶ 15, 17–18.) The January 30, 2006 SSA provided that

SEC would invoice SSE on a monthly basis for the administrative support SEC provided. (Compl. Ex. A, 1/30/2006 SSA ¶ 2.2.)

On or about October 31, 2006, SEC and FKC entered into two Pre-Bidding and Joint Venture Agreements of SFD Associates (the "2006 SFD Joint Venture") through which FKC agreed to assist in the bidding and performing of SEC's part of the Projects, and split any profits SEC earned from the Projects.[6] (Compl. Ex. B, 2006 SFD JV.) The 2006 SFD Joint Venture stated that it superseded and replaced the 2004 SFD Joint Venture and all riders, addenda, and modifications thereto. (*Id.* at 1.) It further stated that bids or proposals for Projects would be "submitted in the name of [SSE] for the benefit of the [2006 SFD] Joint Venture . . . ." (*Id.* ¶ 2.) Pursuant to the 2006 SFD Joint Venture, SEC and FKC agreed that all profits to which SEC was entitled through SSE would be distributed equally, with SEC and FKC each receiving 50 percent, "[u]pon completion of the Principal Contract and after paying or providing for the payment of (a) all known costs and expenses and (b) reserves for such unsettled claims, overruns and other contingencies as all the parties reasonably agree in their discretion, to be necessary

---

[6] One of the Pre-Bidding and Joint Venture Agreements noted that the three 26th Ward Projects already had been awarded to the Joint Ventures prior to October 31, 2006, the effective date of the 2006 SFD Joint Venture agreement. (Compl. Ex. B, 2006 SFD JV.) The other Pre-Bidding and Joint Venture Agreement, effective October 31, 2006, stated that the Joint Ventures "have been declared by the City of New York as the low bidder on" the Croton Contracts. (*Id.*)

and after repaying all sums advanced for working capital . . .
." (Compl. Ex. B, 2006 SFD JV ¶¶ 20, 21.)  A rider to the 2006
SFD Joint Venture further provided that each of the joint
venturers had a one-half interest in SEC's interest in the
Projects, and in all profits, gains, and losses realized or
sustained therefrom.  (*Id.* ¶ 4.)

The following chart represents graphically the
relevant parties and agreements, as described in the Complaint,
the parties' submissions in connection with the instant motion,
and the documents incorporated by reference thereto:



## II.  The Queens Action

In December 2005, plaintiffs commenced litigation (the "Queens Action") against DDR in New York Supreme Court, Queens County (the "Queens court"), alleging, *inter alia*, that DDR had withdrawn from the 2004 SFD Joint Venture.  (*See* Kalish Decl. Ex. B, FKC Queens Compl.)  *See also First Keystone Consultants, Inc. v. DDR Constr. Servs.*, Index. No. 27095/2005.  Among the relief sought by plaintiffs was a declaratory judgment that DDR was not entitled to any profits derived from the 2004 SFD Joint Venture's work on the 26th Ward Project.  (Kalish Decl. Ex. B, FKC Queens Compl. ¶ 32.)

In April 2006, DDR counterclaimed against plaintiffs and asserted third-party claims against the SEC defendants and SSE[7] for, *inter alia*, breach of contract, breach of fiduciary duty, and unjust enrichment.[8]  As relief, DDR sought, *inter alia*, an accounting and dissolution of the 2004 SFD Joint Venture and

---

[7] On October 5, 2009, the New York Supreme Court, Queens County dismissed all of DDR's claims against SSE, and the Second Department affirmed.  *See First Keystone v. DDR Constr. Servs. Inc.*, 901 N.Y.S.2d 906 (N.Y. Sup. Ct. Queens Cnty. 2009), *aff'd in relevant part*, 904 N.Y.S.2d 113, 115-17 (N.Y. App. Div. 2d Dep't 2010).

[8] DDR served plaintiffs with its Verified Answer to Verified Complaint and Counterclaim on April 11, 2006, and its First Amended Verified Answer to Verified Complaint and Amended Counterclaim on November 19, 2007.  (Kalish Decl. ¶¶ 22, 24; Kalish Decl. Ex. C, Verified Answer to Verified Complaint and Counterclaim, dated 4/11/2006; Kalish Decl. Ex. E, DDR Queens Counterclaims against FKC.)  DDR served the SEC Defendants and SSE with its Verified Third Party Complaint on April 14, 2006, and its Second Amended Verified Third Party Complaint on December 23, 2008.  (Kalish Decl. ¶¶ 23, 25; Kalish Decl. Ex. D, Verified Third Party Complaint, filed 4/14/2006; Kalish Decl. Ex. F, Second Amended Verified Third Party Complaint, dated 12/23/2008 ("DDR Queens Counterclaims against SEC").)

a declaratory judgment regarding the amount of profits due and owing to it under the 2004 SFD Joint Venture. (Kalish Decl. Ex. E, DDR Queens Counterclaims against FKC ¶¶ 126-28, 139-48; Kalish Decl. Ex. F, DDR Queens Counterclaims against SEC ¶¶ 130-32, 143-53.)

On November 24, 2008, the Queens court granted DDR "summary judgment as to DDR's entitlement to an accounting" of the 2004 SFD Joint Venture. (*See* Case No. 09-CV-9605(ALC)(AGP) (S.D.N.Y.), ECF No. 63-3, Short Form Order, *First Keystone Consultants, Inc. v. DDR Constr. Servs.*, Index. No. 27095/2005 (N.Y. Sup. Ct. Nov. 24, 2008).) *See also DDR Constr.*, 770 F. Supp. 2d at 638. On November 26, 2008, the Queens court granted DDR's motion for a preliminary injunction prohibiting FKC and SEC, during the pendency of the Queens Action, from:

> (1) disbursing funds of [the 2004 SFD Joint Venture] and [the 2006 SFD Joint Venture] as compensation for themselves or any of their relatives, except by further order of this court, (2) disbursing funds of [the 2004 SFD Joint Venture] and [the 2006 SFD Joint Venture] as a distribution of profits, except by further order of this court, and (3) disbursing funds of [the 2004 SFD Joint Venture] and [the 2006 SFD Joint Venture] in any other manner, except in the ordinary course of business or by further order of this court.

(Kalish Reply Decl. Ex. T, Queens P.I. at 4.) Although the Queens court denied DDR's motion for an order appointing a referee to conduct the accounting of the 2004 SFD Joint Venture,

11

the New York Appellate Division, Second Department, later reversed on that issue, stating, "the referees appointed by the Supreme Court in its prior orders . . . never conducted such an accounting.  DDR was a partner in SFD Associates, and is entitled to an accounting of that joint venture." *First Keystone Consultants, Inc. v. DDR Constr. Servs.*, 904 N.Y.S.2d 113, 117 (N.Y. App. Div. 2d Dep't 2010).

On January 12, 2009, in the Queens Action, the SEC defendants served an Answer and counterclaims on DDR and cross-claims on plaintiffs.  (Kalish Decl. ¶ 26; Kalish Decl. Ex. G, SEC Queens Counterclaims.)  There, the SEC defendants alleged, *inter alia*, that (1) DDR had withdrawn from the 2004 SFD Joint Venture; (2) FKC had breached the 2006 SFD Joint Venture by failing to pay FKC's share of costs and expenses pursuant to the 2006 SFD Joint Venture, including insurance costs and business operating expenses; and (3) FKC had breached the 2006 SFD Joint Venture by entering into improper agreements and incurring improper expenses.  (Kalish Decl. Ex. G, SEC Queens Counterclaims ¶¶ 295-379, 457-73, 483-99.)  As relief, the SEC defendants sought, *inter alia*, (1) a declaratory judgment that DDR retained no interest in the 2004 SFD Joint Venture, the 26th Ward Projects, or the Croton Projects; (2) dissolution of the 2004 SFD Joint Venture; (3) an accounting and dissolution of the 2006 SFD Joint Venture; and (4) an order directing plaintiffs to

return $587,736.26 allegedly embezzled from SEC's Chase Bank accounts. (*Id.* ¶¶ 295-410, 474-82, 563-67, 622-38.)

On February 11, 2009, plaintiffs served an Answer and counterclaims on the SEC defendants in the Queens Action (Kalish Decl. ¶ 27; Kalish Decl. Ex. H, FKC Queens Counterclaims), alleging, *inter alia*, that (1) SEC had breached the 2006 SFD Joint Venture by failing to pay FKC its share of payments for engineering services, failing to release to FKC certain excess amounts in the payroll accounts, failing to reimburse FKC for payments made to Jane Solomon for administrative services, and improperly cashing checks drawn on the Joint Venture accounts; and (2) SEC had breached the August 29, 2005 Agreement between FKC and SEC by wrongfully ceasing to pay FKC $1,500 per week in expenses and $3,000 per week as a draw against FKC's share of the 2004 SFD Joint Venture profits. (Kalish Decl. Ex. H, FKC Queens Counterclaims ¶¶ 660-89, 707.) Plaintiffs sought (1) an accounting of the 2006 SFD Joint Venture; (2) distribution of all monies found to be to due and owing to FKC under the 2006 SFD Joint Venture; and (3) a declaration that the August 29, 2005 Agreement "is in full force and effect and that [] Keystone is entitled to the $1,500 per week in expenses and $3,000 per week as a draw against Keystone's share of profits under that agreement." (*Id.* ¶¶ 701-02, 707.)

## III. The Arbitration Judgment

On or about September 12, 2008, SEC served and filed a Demand for Arbitration on FKC seeking payment of monies drawn by FKC against future profits of a joint venture between FKC and SEC formed on January 21, 2004 (the "Coney Island Joint Venture").[9] (Kalish Decl. Ex. Q, Verified Petition to Confirm Award of Arbitrators, dated 10/15/2009 ("Pet. to Confirm"), Exhibit B; ECF No. 10, Answer, Counterclaims and Cross-Claims of SEC and Levita, dated 3/12/2010 ("SEC E.D.N.Y. Counterclaims") ¶¶ 93-95.) On or about October 12, 2009, a three-member arbitration panel issued SEC an award of $545,147.48 plus interest against FKC. (Kalish Decl. Ex. Q, Pet. to Confirm Exhibit F; SEC E.D.N.Y. Counterclaims ¶ 96.) On January 6, 2010, the New York Supreme Court, Kings County, confirmed the arbitration award and rendered a judgment in favor of SEC for $545,147.48 plus interest against FKC. (Kalish Decl. Ex. R, Order and Judgment, dated 1/6/2010; SEC E.D.N.Y. Counterclaims ¶ 97.)

---

[9] Like the later joint ventures formed by FKC and SEC, the Coney Island Joint Venture was organized to bid on and perform electrical work for a NYCDEP project, specifically, the Coney Island Water Pollution Control Plant Primary Settling Tank Odor Control Building Reconstruction (the "Coney Island Project"). (Kalish Decl. Ex. B, FKC Queens Compl. ¶ 34; Kalish Decl. Ex. G, SEC Queens Counterclaims ¶¶ 276, 278, Exhibit A; Kalish Reply Decl. Ex. T, Queens P.I. at 2.) FKC and SEC agreed that all profits and losses from the Coney Island Joint Venture would be divided equally. (Kalish Decl. Ex. G, SEC Queens Counterclaims Exhibit A ¶ 5.1.) FKC and SEC designated DDR to act as the field project manager for the Coney Island Project. (Kalish Decl. Ex. B, FKC Queens Compl. ¶ 35; Kalish Decl. Ex. G, SEC Queens Counterclaims ¶¶ 19, 279, Exhibit A ¶ 6.2.)

## IV.  The Federal Action

Plaintiffs commenced the instant action (the "Federal Action") on February 17, 2010 seeking, *inter alia*, (1) distribution of funds allegedly owed to FKC, pursuant to the January 30, 2006 SSA, as compensation for consulting services performed by FKC for SSE in connection with bidding on and performing the Projects (Compl. ¶¶ 1(a), 3, 17-25; *id.* Ex. A, 1/30/2006 SSA); (2) distribution of funds allegedly owed to FKC, pursuant to the 2006 SFD Joint Venture, arising from Project payments for union labor furnished by SEC in connection with the performance of the Projects (the "Variance Amounts")[10] (Compl. ¶¶ 1(b), 3, 26-29); and (3) distribution of profits and other funds arising out of the Projects that SEC reported to the

---

[10] The agreement pursuant to which SEC agreed to pay the Variance Amounts to FKC has not been provided to the court.  Further, the submissions provided to the court appear to characterize these amounts in different ways.  For example, plaintiffs' memorandum of law explains that the Variance Amounts represented a fee charged by SEC for managing union employees equal to 6.6 percent of the cost of the union labor.  (ECF No. 102, Memorandum of Law in Support of Plaintiffs' Opposition to Motion of SEC to Dismiss Plaintiffs' First, Second, and Third Causes of Action, dated 7/18/2011 ("Pl. Opp.") at 8.)  On the other hand, the SEC defendants' Answer and Counterclaims in the Federal Action cite to a May 27, 2008 affidavit by Robert Solomon that has not been provided to the court, in which Mr. Solomon is quoted as having explained that:

> [P]ursuant to a January 2006 labor variance Agreement, SSE would pay labor costs to SEC at a fixed hourly rate. This allowed each side to hedge against variations in labor costs, with SEC assuming the risk that labor costs would increase, and SSE assuming the risk of decreased labor costs.  As it played out, the labor costs were below the amount set in the agreement.

(SEC E.D.N.Y. Counterclaims ¶ 26.)

Internal Revenue Service in 2007 and 2008, but which FKC allegedly never received (*id.* ¶¶ 1(c), 3, 30).

On March 12, 2010, the SEC defendants filed their Answer to the Complaint and counterclaimed against plaintiffs alleging, *inter alia*, breach of fiduciary duty and breach of the 2006 SFD Joint Venture by transferring funds from SSE's bank accounts to plaintiffs' own accounts. (SEC E.D.N.Y. Counterclaims ¶¶ 144-79.) The SEC defendants also alleged that FKC had made certain fraudulent conveyances to the Solomons, and that SEC was entitled to pierce FKC's corporate veil and recover from the Solomons personally for the arbitration judgment rendered by the New York Supreme Court, Kings County on January 6, 2010. (*Id.* ¶¶ 90-143).

## DISCUSSION

### I.  *Colorado River* Abstention

Defendant's motion seeks dismissal of plaintiffs' first, second, and third causes of action pursuant to the doctrine of abstention articulated by the United States Supreme Court in *Colorado River Water Conservation District v. United States*, 424 U.S. 800 (1976) ("*Colorado River* abstention").[11]

---

[11] "A motion to dismiss based on the abstention doctrine is also considered as a motion made pursuant to [Federal Rule of Civil Procedure] 12(b)(1)." *City of New York v. Milhelm Attea & Bros., Inc.*, 550 F. Supp. 2d 332, 341-42 (E.D.N.Y. 2008). In adjudicating a motion to dismiss for lack of subject matter jurisdiction pursuant to Rule 12(b)(1), the court may consider matters outside the pleadings. *Makarova v. United States,* 201 F.3d 110, 113 (2d Cir.

*Colorado River* abstention is appropriate in limited "situations involving the contemporaneous exercise of concurrent jurisdictions, either by federal courts or by state and federal courts." *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976). The doctrine presents an "extraordinary and narrow exception" to "the virtually unflagging obligation of the federal courts to exercise the jurisdiction given them." *Id.* at 813, 817 (internal quotation marks and citation omitted). Unlike other doctrines of abstention, which are based on "considerations of proper constitutional adjudication and regard for federal-state relations," *Colorado River* abstention "rest[s] on considerations of wise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation." *Id.* at 817 (internal quotation marks and citation omitted).

Pursuant to *Colorado River* abstention, a district court may stay or dismiss a party's claims only where (1) the relevant state and federal actions are "parallel" and (2) an evaluation of a six-factor test weighs in favor of abstention. *DDR Constr. Servs.*, 770 F. Supp. 2d at 644 (citing *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 16 (1983)).

---

2000). The court has considered the record before it and other related documents where necessary for clarification.

"The circumstances permitting dismissal are extremely limited, and 'the balance [must be] heavily weighted in favor of the exercise of jurisdiction.'" *Id.* (quoting *Moses H. Cone*, 460 U.S. at 16). "The Court's task is not to find some substantial reason for the *exercise* of jurisdiction; rather, the task is to ascertain whether there exists exceptional circumstances, the clearest of justifications, that can suffice under *Colorado River* to justify the *surrender* of that jurisdiction." *Jamaica Hosp. Med. Ctr. v. United Health Grp., Inc.*, 584 F. Supp. 2d 489, 495 (E.D.N.Y. 2008) (quoting *Moses H. Cone*, 460 U.S. at 25-26) (emphasis in original).

## A.  The Queens Action and the Federal Action are Parallel.

The threshold question in determining whether a federal court should abstain under *Colorado River* from exercising concurrent jurisdiction with a state court is whether the proceedings are "parallel." *Dittmer v. Cnty. of Suffolk*, 146 F.3d 113, 118 (2d Cir. 1998) ("[A] finding that the concurrent proceedings are 'parallel' is a necessary prerequisite to abstention under *Colorado River*."). In determining whether two actions are parallel for purposes of *Colorado River* abstention, the court may consider whether the actions involve the same (i) parties, (ii) subject matter, and (iii) relief requested. *Hous. Works, Inc. v. City of New York*, 72 F. Supp. 2d 402, 417 (S.D.N.Y. 1999). Lawsuits are

considered "parallel" if "substantially the same parties are contemporaneously litigating substantially the same issue" in both forums. *Dittmer*, 146 F.3d at 118. "Complete identity of parties and claims is not required; the parallel litigation requirement is satisfied when the main issue in the case is the subject of already pending litigation." *GBA Contracting Corp. v. Fid. & Deposit Co.*, No. 00-CV-1333, 2001 U.S. Dist. LEXIS 32, at *3 (S.D.N.Y. Jan. 3, 2001). There must, however, be "a substantial likelihood that the state litigation will dispose of *all* claims presented in the federal case." *Stone v. Patchett*, No. 08-CV-5171, 2009 U.S. Dist. LEXIS 35049, at *41 (S.D.N.Y. Apr. 23, 2009) (quoting *In re Comverse*, No. 06-CV-1849, 2006 U.S. Dist. LEXIS 80195, at *6 (E.D.N.Y. Nov. 3, 2006)).

The court has reviewed the parties' submissions, including the numerous pleadings in the Queens Action asserting claims, counterclaims, and cross-claims, which clearly demonstrate that the Queens Action and the instant Federal Action are parallel. As an initial matter, all of the parties remaining in the instant Federal Action are also parties to the Queens Action. Although the Queens Action involves an additional party, DDR, "that fact does not render the proceedings non-parallel." *Mouchantaf v. Int'l Modeling & Talent Ass'n*, 368 F. Supp. 2d 303, 306 (S.D.N.Y. 2005). On the contrary, as discussed further below, the fact that DDR is

absent from the instant action weighs in favor of abstention here.

Further, the subject matter of the Federal Action, in which the parties dispute their respective rights to funds arising out of the NYCDEP Projects, is also at issue in the Queens Action.[12] All of the agreements invoked by FKC in the Queens Action and the instant Federal Action were entered into for the purpose of bidding on and performing the Projects and distributing the money derived therefrom. The 2004 and 2006 SFD Joint Ventures were the vehicles through which FKC expected to share in any profits or gains that SEC earned from the Projects via its interest in SSE. The August 29, 2005 Agreement purportedly promised FKC expenses charged as a job cost, and a draw against profits "upon award of the [26th Ward] project by the [NYC]DEP" to SSE. (Compl. Ex. G, 8/29/2005 Agmt.) And the January 30, 2006 SSA was an agreement for SEC to provide to SSE administrative support services, including business consulting services to be performed by FKC, to assist in performing the Projects.

---

[12] The court notes that the nature of the parties' submissions, which improperly assume this court's familiarity with the parties, agreements, events, and other facts and circumstances, further reveals the parties' long history of litigation over the same issues in at least eight other lawsuits, including the Queens Action. (*See* ECF No. 50, Letter transmitting chart of duplicative claims, dated 11/12/2010, at 3; *Solomon v. Siemens Indus., Inc.*, No. 11-CV-1321(DLI)(SMG) (E.D.N.Y.).)

In both the Queens Action and the instant Federal
Action, the essential elements of plaintiffs' claims are that
SEC violated its contractual obligations to distribute funds
earned by SEC in connection with the Projects. Plaintiffs'
first cause of action in the Federal Action seeks the payment
for business consulting services allegedly performed by FKC for
SSE in connection with the Projects.[13] (*See* Compl. ¶¶ 17-25.)
Plaintiffs' second cause of action concerns "override" fees
purportedly paid to SEC for union labor furnished by SEC for the
purpose of performing electrical work for the Projects. (*See
id.* ¶¶ 26-29.) Plaintiffs' third cause of action relates to
profits and other income from the Projects allegedly reported by
SEC to the Internal Revenue Service.[14] (*See id.* ¶ 30.)
Moreover, concurrent with the claims in the Federal Action,
plaintiffs' counterclaims against SEC in the Queens Action
relate to engineering services, administrative services, payroll

---

[13] To the extent FKC alleges that SEC may contend that any payments received
by FKC from SEC were made pursuant to the August 29, 2005 Agreement, and not
pursuant to the January 30, 2006 SSA (*see* Compl. ¶¶ 17-25), FKC has requested
that issue to be resolved in the Queens Action, where FKC seeks a declaratory
judgment that the August 29, 2005 Agreement "is in full force and effect . .
. ." (Kalish Decl. Ex. H, FKC Queens Counterclaims ¶ 707.)

[14] Whether plaintiffs are due the payments sought in the second and third
causes of action in the Federal Action will be determined by the Queens
Action. In the Queens Action, both FKC and SEC have sought an accounting to
determine the profits derived from the Projects, including labor provided by
SEC to be paid under the 2006 SFD Joint Venture. (*See* Kalish Decl. Ex. H,
FKC Queens Counterclaims ¶ 701 (seeking "a detailed accounting pursuant to
the JV Agreements . . . to determine the exact amount of monies received
under the contracts, the exact amount of monies retained by and/or paid out
by SEC, and [the] exact amount of monies that remain due and owing to
Plaintiff"); Kalish Decl. Ex. G, SEC Queens Counterclaims ¶ 566 (seeking "an
accounting of the books and records from July 2007 . . . to the present").)

accounts, and other funds allegedly earned or owed in connection with the performance of the Projects. (*See* Kalish Decl. Ex. H, FKC Queens Counterclaims ¶¶ 660-89.)

In both the Queens Action and the Federal Action, FKC and SEC have asserted multiple claims against each other arising out of alleged breaches of, and payments sought under, the 2006 SFD Joint Venture. Where, as here, "the same cause of action, regardless of theory or pleadings, is asserted in both courts," the cases are likely to be parallel. *Telesco v. Telesco Fuel & Masons' Materials, Inc.*, 765 F.2d 356, 362 (2d Cir. 1985).

Moreover, the relief sought by FKC in the Federal Action – distribution of business consulting fees, Variance Amounts, and profits – is ultimately also sought in the Queens Action and will be determined by the accountings of the 2004 and 2006 SFD Joint Ventures sought by the three parties in the Queens Action, including the parties in the Federal Action. It is undisputed that in the Queens Action, (1) DDR sought and was granted summary judgment as to its entitlement to an accounting of the 2004 SFD Joint Venture; (2) both SEC and FKC have requested an accounting of the 2006 SFD Joint Venture and distribution of any funds found due and owing pursuant to that agreement; and (3) the court issued a preliminary injunction prohibiting FKC and SEC from disbursing funds of the 2004 and

2006 SFD Joint Ventures in any manner "except in the ordinary course of business or by further order of th[e] court."

The accounting of the 2006 SFD Joint Venture sought by FKC in the Queens Action is broad in scope and includes, *inter alia*, "all bank statements and tax records . . . to determine the exact amount of monies received under the contracts, the exact amount of monies retained by and/or paid out by SEC, and [the] exact amount of monies that remain due and owing to [FKC]." (Kalish Decl. Ex. H, FKC Queens Counterclaims ¶ 701.) The terms of both the 2004 and 2006 SFD Joint Ventures provide that profits from the Projects will be distributed "after paying or providing for the payment of (a) all known costs and expenses and (b) reserves for such unsettled claims, overruns and other contingencies . . . and after repaying all sums advanced for working capital . . . ." (Kalish Decl. Ex. A, 2004 SFD JV ¶ 21; Compl. Ex. B, 2006 SFD JV ¶ 20.) By necessity, therefore, a proper accounting in the Queens Action of the 2004 and 2006 SFD Joint Ventures will factor in the costs and expenses for business consulting fees, labor variance charges, and other services or equipment supplied in connection with the performance of the Projects, as any unsettled claims for such items would need to be deducted before profits were distributed to the Joint Venture partners. Thus, to the extent that plaintiffs are entitled to any of the profits or gains they seek

in the Federal Action, those funds, if any, will be determined and allocated in the Queens Action after the accounting is completed.  *See Stone*, 2009 U.S. Dist. LEXIS 35049, at *43 (finding that the state and federal actions were parallel where both actions would allocate attorney's fees among class counsel).

In the Federal Action, distribution of any profits or gains derived from the Projects — and, therefore, disposition of some or all of plaintiffs' claims — by the federal court may in fact be proscribed by the Queens court's injunction, which predates the filing of the Federal Action.  Although FKC insists that the injunction applies only to "profits" earned on the NYCDEP Projects, and not to "gains" such as the Variance Amounts, (Pl. Opp. at 8), this argument is unavailing.  On its face, the injunction is not limited to "profits" but instead applies to all "funds" of the 2004 and 2006 SFD Joint Ventures. (Kalish Reply Decl. Ex. T, Queens P.I. at 4.)  In any event, it is not the place of this court to determine the scope of another court's injunction.  *See United States v. Barnett*, 376 U.S. 681, 697-701 (1964) ("In order that a court may compel obedience to its orders it must have the right to inquire whether there has been any disobedience thereof.  To submit the question of disobedience to another tribunal, be it a jury or another court, would operate to deprive the proceeding of half its efficiency."

24

(citation omitted)). Thus, all of the relief sought by plaintiffs in the Federal Action will be determined in the Queens Action.

Accordingly, because the Queens Action will determine and dispose of all of plaintiffs' claims in the Federal Action, the court finds that the two actions are parallel for the purpose of *Colorado River* abstention.

**B.  The *Colorado River* Factors Warrant Dismissal.**

A district court deciding whether to stay or dismiss a federal proceeding that is parallel to one pending in a state court must consider six factors: (1) whether the controversy involves a res over which one of the courts has assumed jurisdiction; (2) whether the federal forum is less inconvenient than the other for the parties; (3) whether staying or dismissing the federal action will avoid piecemeal litigation; (4) the order in which the actions were filed, and whether proceedings have advanced more in one forum than in the other; (5) whether federal law provides the rule of decision; and (6) whether the state procedures are adequate to protect the plaintiff's federal rights. *Woodford v. Cmty. Action Agency of Greene Cnty., Inc.*, 239 F.3d 517, 522 (2d Cir. 2001) (citing *Colorado River*, 424 U.S. at 818; *Moses H. Cone*, 460 U.S. at 22, 23, 25-27). Courts may also consider "the vexatious and reactive nature of either the federal or state litigation" as

part of its *Colorado River* analysis. *Bernstein v. Hosiery Mfg.*
*Corp. of Morganton, Inc.,* 850 F. Supp 176, 185 (E.D.N.Y. 1994)
(quoting *Moses H. Cone*, 460 U.S. at 17 n.20).

In applying these factors, a district court should be
mindful that "the decision whether to dismiss a federal action
because of parallel state-court litigation does not rest on a
mechanical checklist, but on a careful balancing of the
important factors as they apply in a given case, with the
balance heavily weighted in favor of the exercise of
jurisdiction." *Moses H. Cone*, 460 U.S. at 16; *see also Telesco*,
765 F.2d at 362 ("In applying the exceptional circumstances
test, it is relevant to note . . . that this test is not subject
to precise rules, but rather should 'be applied in a pragmatic,
flexible manner with a view to the realities of the case at
hand.'" (quoting *Moses H. Cone*, 460 U.S. at 21)). "No single
factor is necessarily decisive, and the weight to be given to
any one factor may vary greatly from case to case, depending on
the particular setting of the case." *Vill. of Westfield v.*
*Welch's*, 170 F.3d 116, 121 (2d Cir. 1999) (internal quotation
marks and citations omitted). When a factor is facially
neutral, that "is a basis for retaining jurisdiction not for
yielding it." *Woodford*, 239 F.3d at 522. Ultimately, the
decision of whether to stay or dismiss the federal suit under

*Colorado River* abstention lies within the court's discretion. *Moses H. Cone*, 460 U.S. at 19.

Plaintiffs have failed to present any argument with respect to the *Colorado River* factors set forth above. Nevertheless, the court has undertaken an analysis of the factors based on the record before it.

### i.   Jurisdiction over a Res

The first factor is whether either court has assumed jurisdiction over any res or property.  In this case, both the Queens court and the federal court have issued orders with respect to funds in dispute between the parties.

On November 26, 2008, more than a year before the Federal Action was filed, the Queens court issued a preliminary injunction prohibiting, "except in the ordinary course of business or by further order of [the Queens] court," the parties from "disbursing funds" of the 2004 and 2006 SFD Joint Ventures for themselves, as a distribution of profits, and "in any other manner."  (Kalish Reply Decl. Ex. T, Queens P.I. at 4.)

Approximately two years later, on November 22, 2010, pursuant to a consent motion filed by all parties to the Federal Action and "so ordered" by this court, J.P. Morgan Chase Bank, N.A. ("Chase Bank") deposited into the federal court registry the sum of $598,716.14, representing funds to which all parties in the Federal and Queens Actions have asserted claims.  (*See*

ECF No. 36, Letter Motion to Deposit Funds, filed 10/28/2010;

ECF No. 37, Reply in Support re Letter Motion, filed 10/28/2010;

ECF No. 43, Letter Withdrawing Objection to Payment of Funds

into Court Registry, filed 11/1/2010; ECF No. 51, Consent Motion

to Deposit Funds, filed 11/22/2010; Order Granting Motion to

Deposit Funds, dated 11/22/2010; ECF No. 55, Letter Motion to

Dismiss, filed 12/13/2010.)  The Clerk of this court thereafter

deposited those funds in an interest-bearing account, and the

claims against Chase Bank were dismissed.  (*See* Order Granting

Motion to Dismiss, dated 12/15/2010; ECF No. 57, Clerk's

Judgment dated 12/15/2010.)

Although a federal court's jurisdiction over a res is

a factor that normally militates in favor of retaining

jurisdiction over the lawsuit, the court does not find this

factor to be compelling under the circumstances in this case.

Here, the solitary purpose of depositing the funds into this

court's registry was to allow Chase Bank to withdraw from the

Federal Action, and no determination was made as to whether

those funds were to be used to satisfy the parties' claims in

the Federal Action.  On the contrary, the federal court made no

suggestions as to how, when, or under what terms the deposited

funds might be distributed.

Further, there is strong evidence in the record on

which this court could find that the funds deposited into this

court's registry very likely are subject to the pre-existing injunction issued by the Queens court on November 26, 2008, more than a year before the Federal Action was filed. (*See* Kalish Reply Decl. Ex. T, Queens P.I.)  Indeed, DDR, a party to the Queens Action, has asserted that the money deposited in the court's registry "is comprised of labor variance profits and was and remains the subject of the Queens County Action . . . [and DDR] will regard any distribution of these monies in the manner requested by First Keystone and/or Schlesinger as a violation of the Preliminary Injunction, whether through settlement or otherwise."  (ECF No. 47, Letter from Ronald M. Neumann to Magistrate Judge Gold, dated 11/8/2010 (attaching letter from DDR's counsel to counsel for Chase Bank).)  By prohibiting disbursement of any funds from the 2004 and 2006 SFD Joint Ventures during the pendency of the Queens Action, the Queens court apparently has asserted jurisdiction over those funds before the instant Federal Action was even commenced.  The fact that the funds are held in the federal court's registry does not authorize this court to allocate such funds where doing so may very well contravene a pre-existing order of the Queens court. Whether the funds in the federal court's registry are in fact subject to the injunction, however, must be decided by the Queens court that issued it, and not by this court. *See In re WestPoint Stevens, Inc.*, 600 F.3d 231, 251-52 (2d Cir. 2010)

("To be sure, deference is owed to a court's interpretation of its own orders . . . where the court drafts the order." (internal citations omitted)); *see also United States v. Barnett*, 376 U.S. at 697-701; *United States v. Dupree*, No. 10-CR-627, 2011 U.S. Dist. LEXIS 82817, at *13-14 (E.D.N.Y. July 28, 2011) (finding that a state court order could "only be interpreted by the court that issued it").  If the Queens court clarifies that the funds in this court's registry are subject to the injunction, this court will vacate its order that the funds be deposited in the federal court registry and the funds may be transferred to the Queens County Clerk, upon the appropriate orders.

Moreover, the facts here are distinguishable from those in *Stone v. Patchett*, No. 08-CV-5171, 2009 U.S. Dist. LEXIS 35049, at *45-46 (S.D.N.Y. Apr. 23, 2009), where *Colorado River* abstention was denied because both the state and federal courts had issued orders concerning the disputed res.  In *Stone*, the state court had presided over the underlying litigation, issued an award for attorneys' fees, and ultimately was responsible for allocating the fees, which were being held in a bank account under the joint control of the parties' counsel. *Id*. at *45.  The district court presiding over the parallel federal action, however, subsequently ordered that the "status quo" be maintained, "essentially precluding all parties from

taking any action" with respect to the funds. *Id.* at *46.
Ultimately, the court found that because both courts had
asserted jurisdiction over the fee award, the first *Colorado
River* factor weighed against abstention. *Id.*

By contrast, in the instant case, the state court is
presiding over the accounting that is necessary to determine the
parties' rights to funds derived from the Projects, and also has
issued the preliminary injunction prohibiting the parties from
altering the *status quo* by distributing the funds. Further
distinguishing the instant case from *Stone*, the federal court
here has not issued any orders to the remaining parties with
respect to the disputed funds. Instead, the federal court's
order concerning the disputed funds was limited to directing
Chase Bank, which is no longer a party to the litigation, to
deposit the funds into the court's registry so that the
remaining parties could litigate their rights thereto, here or
elsewhere. Accordingly, because the Queens court has issued an
injunction prohibiting distribution of the disputed funds, while
the federal court has simply provided a mechanism for preserving
the *status quo*, the court finds that this factor weighs in favor
of abstention.

### ii. Inconvenience of the Federal Forum

The second factor, whether the federal forum is less
inconvenient than the state forum for the parties, weighs

slightly against abstention in this case.  Inconvenience under this factor refers to the geographic location of the respective courthouses.  *See Arkwright-Boston Mfrs. Mut. Ins. Co. v. City of New York*, 762 F.2d 205, 210 (2d Cir. 1985) (finding no inconvenience when the state and federal courthouses were next to each other).  Where the federal court is "just as convenient" as the state court, this factor favors retention of jurisdiction.  *Vill. of Westfield*, 170 F.3d at 122 (citations omitted).

On February 17, 2010, the Solomons initiated the instant action in the United States District Court for the Eastern District of New York, invoking the court's diversity jurisdiction by stating that they were residents of Florida.  In February 2011, however, the Solomons filed another action in New York Supreme Court, Queens County, against one of the Project partners, SEA, stating that they resided in Queens, New York. (*See* Summons with Notice, *Solomon v. Siemens Indus., Inc.*, Index No. 4636/2011 (N.Y. Sup. Ct. Queens Cnty. Feb. 23, 2011).) Further, in April 2011, the Solomons opposed removal of that action to the Eastern District of New York, representing to the district court that the Queens court was a convenient forum for them while the Eastern District of New York was not. Specifically, the Solomons wrote:

> The address argument for removal is specious
> — our address (75-25 153rd Street, Flushing,
> NY 11367 Apt 316) is valid and Siemens has
> an office in Maspeth Queens . . . . We
> chose to prosecute the case in Queens
> Supreme Court after careful consideration of
> the following: . . . Queens Court is close
> to our residence where as it is difficult,
> both physically and financially, to travel
> to [the Eastern District courthouse in
> Brooklyn at] Cadman Plaza from Flushing — (a
> bus and multiple subways are required) —
> facts known to the defendants.

(Kalish Decl. Ex. S, Letter to the Hon. Dora L. Irizarry and
Chief Magistrate Judge Steven M. Gold, dated 4/25/2011.)
Nevertheless, giving respectful consideration to the Solomons'
purported residence in Florida and the FKC plaintiffs' choice of
forum in this case, the court finds that the inconvenience
factor weighs slightly against abstention because the geographic
location of the federal courthouse in Brooklyn, as opposed to
the Queens County courthouse, is of little consequence.

### iii. Piecemeal Litigation

The Supreme Court has stated that "the most important
factor in our decision to approve the dismissal [in *Colorado
River*] was the 'clear federal policy . . . [of] avoidance of
piecemeal adjudication." *Moses H. Cone*, 460 U.S. at 16 (quoting
*Colorado River*, 424 U.S. at 819; *see also Arkwright-Boston*, 762
F.2d at 211 (noting that, "[a]s in *Colorado River*, the danger of
piecemeal litigation is the paramount consideration"); *Bull &
Bear Grp., Inc. v. Fuller*, 786 F. Supp. 388, 392 (S.D.N.Y. 1992)

(finding abstention appropriate where "avoidance of piecemeal litigation [was] strongly implicated"). However, the "mere potential for conflict in the results of the adjudications, does not, without more, warrant staying [the] exercise of federal jurisdiction." *Colorado River*, 424 U.S. at 816.

The crux of plaintiffs' claims in both the Queens Action and the Federal Action is that they were deprived of money owed to them in connection with the performance of the Projects. Although no party yet has sought an accounting in the Federal Action, an accounting would be required in order to determine plaintiffs' entitlement to the Project funds.

Moreover, in considering other actions commenced by the FKC plaintiffs regarding the same agreements, both the Nassau County Supreme Court and the Queens County Supreme Court have acknowledged that a single comprehensive accounting of all the funds arising out of the Projects is required in order to determine the parties' rights thereunder. In March 2008, the Nassau County Supreme Court transferred an action arising out of the same set of agreements to Queens County to be consolidated with the Queens Action, stating:

> Even though First Keystone and Schlesinger claim to have their own feud, arising from an agreement made after DDR's departure [the 2006 SFD Joint Venture], that feud has the fingerprints of the [2004] SFD [Joint Venture] and the circumstances under which that joint venture morphed into a new one.

34

> Until the funds received under the 26th Ward
> Project are accounted for, to the view of
> the court, there is no firm ground upon
> which an accounting between First Keystone
> can take place. . . . DDR seeks an
> accounting of SFD. First Keystone seeks an
> accounting of "SFD" – only minus DDR's
> interest. One accounting should take place,
> not two separate ones. (citations omitted).

(Kalish Reply Decl. Ex. U, Short Form Order, *First Keystone Consultants, Inc. v. Schlesinger Elec. Contractors, Inc.*, Index. No. 22828/2007 (N.Y. Sup. Ct. Nassau Cnty. Mar. 3, 2008) ("Nassau 3/3/2008 Transfer Order") at 4.) Similarly, during a status conference in October 2011, the Queens court advised plaintiffs that "to prove your case either here or [in the Federal Action], you have to know what you are talking about, which includes the accounting." (ECF No. 125, Status Report dated 11/4/2011, attaching Transcript of Proceedings in Queens Supreme Court, dated 10/12/2011 ("10/12/2011 Queens Tr.") at 12.)

As discussed above, the accountings of the 2004 and 2006 SFD Joint Ventures sought by the parties in the Queens Action will necessarily consider the fees, profits, and other gains due and owing to FKC pursuant to the parties' agreements related to the Projects and, accordingly, will determine what may be due and owing to FKC in the Federal Action. As the Second Circuit has noted, "[t]he existence of such concurrent proceedings creates the serious potential for spawning an

35

unseemly race to see which forum can resolve the same issues
first [which would be] prejudicial, to say the least, to the
possibility of reasoned decision-making by either forum."
*Arkwright-Boston*, 762 F.2d at 211 (quoting *Ariz. v. San Carlos
Apache Tribe of Ariz.*, 463 U.S. 545 (1983)).  Furthermore,
where, as here, the "linchpin" of the federal action is the same
issue at the core of the state action, there is a "strong
likelihood of needless duplication of the state proceeding."
*Inn Chu Trading Co. Ltd. v. Sara Lee Corp.*, 810 F. Supp. 501,
508 (S.D.N.Y. 1992).

        The risk of piecemeal adjudication is especially great
where a party in one lawsuit is absent from the other.  As the
Second Circuit has explained:

> [T]he primary context in which we have
> affirmed *Colorado River* abstention in order
> to avoid piecemeal adjudication has involved
> lawsuits that posed a risk of inconsistent
> outcomes not preventable by principles of
> res judicata and collateral estoppel.  The
> classic example arises where all of the
> potentially liable defendants are parties in
> one lawsuit, but in the other lawsuit, one
> defendant seeks a declaration of
> nonliability and the other potentially
> liable defendants are not parties.

*Woodford*, 239 F.3d at 524.  Similar risks of piecemeal and
inconsistent results are prevalent in this case.[15]  For example,

_____

[15] Although the parties have submitted transcripts of proceedings in the
Queens Action in which FKC and DDR purportedly sought to dismiss their
affirmative claims, the parties have not presented any reliable evidence that
those claims have, in fact, been dismissed in the Queens Action.  (*See* ECF

in the Queens Action, DDR asserts that it is entitled to one-third of SEC's interest in the profits and gains arising out of the Projects undertaken by SSE on behalf of the 2004 SFD Joint Venture. (*See* Kalish Decl. Ex. E, DDR Queens Counterclaims against FKC ¶¶ 140, 158-59; Kalish Decl. Ex. F, DDR Queens Counterclaims against SEC ¶¶ 144, 163-64.) In the Federal Action, to which DDR is not a party, FKC also seeks distribution of profits and gains arising out of the Projects based on a one-half share that excludes DDR. In particular, FKC asserts that it is entitled to 50 percent of the profits and gains realized by SEC from the Projects and seeks "immediate payment of FKC's fifty percent prorata share of Variance Amounts . . . ." (Compl. ¶¶ 1(b), 26; *id.* at 13.) Furthermore, plaintiffs and other parties in the Queens Action also seek declaratory relief as to certain agreements, including the 2004 SFD Joint Venture, the August 29, 2005 Agreement, and the Projects. (*See, e.g.*, Kalish Decl. Ex. B, FKC Queens Compl. ¶¶ 11-32 (seeking declaratory judgment that DDR has no interest in the 26th Ward Project); Kalish Decl. Ex. H, FKC Queens Counterclaims ¶¶ 704-07 (seeking declaratory judgment that FKC is entitled to payments pursuant to the August 29, 2005 Agreement); Kalish Decl. Ex. G,

---

No. 112, Letter Providing Transcript, dated 9/14/2011, attaching Transcript of Proceedings in Queens Supreme Court, dated 9/7/2011 ("9/7/2011 Queens Tr."), at 3, 9-10; 10/12/2011 Queens Tr., at 3-7, 15-17.) Further, to the extent that FKC's and SEC's cross-claims and counterclaims remain, the accounting that both FKC and SEC have requested will still need to be performed in the Queens Action.

SEC Queens Counterclaims ¶¶ 377-78, 380-96 (seeking declaratory judgment that DDR has no interest in the 2004 SFD Joint Venture, the Wards Island Project, or the Croton Project); Kalish Decl. Ex. F, DDR Queens Counterclaims against SEC ¶¶ 130-32 (seeking declaratory judgment that DDR is entitled to profits under, *inter alia*, the 2004 SFD Joint Venture); Kalish Decl. Ex. E, DDR Queens Counterclaims against FKC ¶¶ 126-28 (same).)

If the Federal Action were to proceed, SEC could be faced with conflicting liability in the two cases. For example, if the federal court awarded FKC half of SEC's interest in the profits and gains from the Projects, and the Queens court ruled that DDR was entitled to one third of SEC's interest in all profits and gains therefrom, SEC would be subject to inconsistent directives from the courts. Although a finding by the Queens court that DDR was a one-third partner in the 2004 SFD Joint Venture may be binding on FKC and SEC in the Federal Action, a finding in the Federal Action that FKC is entitled to 50 percent of the Variance Amounts would not have a preclusive effect on DDR in the Queens Action. Thus, DDR's absence from the Federal Action creates a significant risk of inconsistent adjudication, weighing in favor of abstention. *See, e.g.*, *De Cisneros v. Younger*, 871 F.2d 305, 308 (2d Cir. 1989) (finding abstention warranted where, *inter alia*, even if plaintiff were relieved of liability in federal court, he could not use that

judgment preclusively in state court because other plaintiffs in state court were not parties to the federal action).

Although plaintiffs assert that the Federal Action does not involve any funds relating to the 2004 SFD Joint Venture (Pl. Opp. at 4), a careful review of the timing of the Projects and agreements raised in the Complaint reveals that plaintiffs' assertion is baseless. Plaintiffs' Complaint alleges that "[a]ll of the claims stated in this Complaint arise from the dealings between FKC and SEC in connection with the aforementioned Projects . . . and contractual agreements" (Compl. ¶ 16), including the 2005 26th Ward Projects and the 2006 Croton Projects (*id.* ¶¶ 13-14). In plaintiffs' first cause of action, for example, plaintiffs seek compensation for business consulting services performed by FKC for SSE pursuant to the January 30, 2006 SSA, which, according to plaintiffs, was effective *nunc pro tunc* as of September 1, 2005. (*Id.* ¶¶ 1(a), 17-25.) Plaintiffs deny SEC's assertion that it paid FKC the fees owed pursuant to the January 30, 2006 SSA, and allege instead that any such payments were made pursuant to the separate August 29, 2005 Agreement. (*Id.* ¶¶ 17-25.) Both the January 30, 2006 SSA and the August 29, 2005 Agreement were executed well before the 2006 SFD Joint Venture came into effect on October 31, 2006. Indeed, the August 29, 2005 Agreement between FKC and SEC specifically references the 2004 SFD Joint

Venture ("Tri-Venture agreement of August 20, 2004") and the 2005 26th Ward Project. (Compl. Ex. G, 8/29/2005 Agmt.) Moreover, the 2006 SFD Joint Venture itself refers to the 2005 26th Ward Projects as "Prior Contracts" already awarded to the joint venturers. (Compl. Ex. B, 2006 SFD JV at 1.) Thus, to the extent that plaintiffs seek any fees for consulting services performed in connection with the Projects prior to the October 31, 2006 effective date of the 2006 SFD Joint Venture, those fees would be factored into a calculation of the total profits and gains of the 2004 SFD Joint Venture, and not solely the later 2006 SFD Joint Venture. Accordingly, a ruling by this court regarding the distribution of funds earned prior to October 31, 2006 would necessarily consider the parties' respective rights pursuant to the 2004 SFD Joint Venture and would present a risk of inconsistent judgments in light of DDR's absence from the Federal Action.

The Second Circuit's recent opinion in *Niagara Mohawk Power Corporation v. Hudson Black River Regulating District*, No. 10-4402-cv, 2012 U.S. App. LEXIS 4756 (2d Cir. Mar. 7, 2012) provides additional guidance for the court in this case. In *Niagara Mohawk*, the Court of Appeals reversed the district court's decision to abstain pursuant to the *Colorado River* abstention doctrine, in part because the parties' twenty separate actions in New York state courts already were piecemeal

and the "single federal case . . . would go to the heart of all the issues." *Id.* at *46. Here, in contrast, the Federal Action involves only a fraction of the claims arising out of the Projects, while the claims asserted and relief sought in the Queens Action are more comprehensive and include the issues raised in the Federal Action. As previously discussed, resolution of the Federal Action would require an accounting that the parties have already sought in the Queens Action. Moreover, it is notable that two separate state courts have already recognized that the Queens Action will resolve plaintiffs' parallel claims to funds arising out of the Projects. (*See* Kalish Reply Decl. Ex. U, Nassau 3/3/2008 Transfer Order (transferring action to Queens Supreme Court to be consolidated with the Queens Action); ECF No. 142-1, Amended Decision/Order, *First Keystone Consultants, Inc. v. N.Y. City Dep't of Envtl. Prot.*, Index No. 303366/2010 (N.Y. Sup. Ct. Bronx Cnty. Nov. 1, 2010) ("Bronx 11/1/2010 Order") (the Bronx court noted that FKC "concede[d] the field, by withdrawing its second cause of action" against SEC upon SEC's motion to dismiss on the ground that there were prior actions pending between the same parties for the same relief in Queens County and the Eastern District of New York).) Finally, the "[s]eparate litigation of the different contracts increases the likelihood that this dispute will drag on and decreases the likelihood of

settlement." *Radioactive, J.V. v. Manson*, 153 F. Supp. 2d 462, 475 (S.D.N.Y. 2001).

Accordingly, the avoidance of piecemeal litigation weighs strongly in favor of abstention in this case.

### iv. Filing Order

The fourth factor, the order in which the actions were filed, "does not rest on a race to the courthouse. Instead, this factor is considered in a common-sense manner by examining how much progress has been made in each forum." *Arkwright-Boston*, 762 F.2d at 211; *see also Vill. of Westfield*, 170 F.3d at 122 (this factor of the *Colorado River* doctrine turns not only "on the sequence in which the cases were filed, 'but [also on] how much progress has been made in the two actions.'" (quoting *Moses H. Cone*, 460 U.S. at 21)).

The record before the court demonstrates that during the five years preceding the commencement of the Federal Action and thereafter, the Queens Action has advanced much further than the Federal Action. *Cf. Niagara Mohawk*, 2012 U.S. App. LEXIS 4756, at *48 (finding abstention inappropriate where the federal action was "running well ahead of the state suit"). FKC commenced the Queens Action on December 16, 2005, and filed its counterclaims against SEC on February 11, 2009, more than a year before the Federal Action was filed on February 17, 2010. In the Queens Action, the parties have filed multiple cross-claims

and counterclaims, engaged in extensive discovery, and filed
nearly 40 motions and multiple appeals. (*See* Kalish Decl. ¶ 30;
9/7/2011 Queens Tr. at 4, 7-8; *see also* Docket Sheet, *First
Keystone Consultants, Inc. v. DDR Constr. Servs.*, Index No.
27095/2005 (N.Y. Sup. Ct. Queens Cnty.).) SEC asserts, without
any dispute by plaintiffs, that hundreds of thousands of pages
of discovery have been exchanged, including the documents
required for the accounting to be performed. (Def. Mem. at 15-
16; Kalish Decl. ¶ 30.) Further, the Queens court has selected
an accounting firm to conduct the accounting ordered by that
court. (*See* ECF No. 84, Motion for Reconsideration, dated
6/1/2011, at 1 (noting that Justice Hart selected the firm of
Mitchell & Titus to perform an accounting, which "involves
several projects performed by [SSE] having a total contract
value of $250 million"); *see also* 9/7/2011 Queens Tr. at 6, 8-9,
11; 10/12/2011 Queens Tr. at 10.)

Objecting to the defendant's motion to dismiss
pursuant to *Colorado River* abstention, plaintiffs' counsel
complains that the Queens Action is "moving at a glacial pace"
(Pl. Opp. at 8) and is "hopelessly mired in controversy" (*id.* at
1). However, it appears that any delay has been caused by the
parties' own bitter disputes, including over who will bear the
cost of the accounting ordered by the Queens court. (*See*
9/7/2011 Queens Tr. at 5-6; 10/12/2011 Queens Tr. at 10-11.)

Indeed, the record demonstrates that the judge in the Queens Action repeatedly has advised the parties that he is willing to schedule the case for trial. (*See, e.g.*, 9/7/2011 Queens Tr. at 4, 8; 10/12/11 Queens Tr. at 8-12.) *Cf. Niagara Mohawk*, 2012 U.S. App. LEXIS 4756, at \*47 (finding abstention inappropriate where, *inter alia*, none of the state actions "has been resolved or appears close to disposition"). Further, although plaintiffs' justification in pursuing the Federal Action is that they are unhappy with the progress of the Queens litigation, the law discourages such a race to adjudication, particularly where plaintiffs have contributed to the delay about which they complain. *See Arkwright-Boston*, 762 F.2d at 211 (noting that "concurrent proceedings creates the serious potential for spawning an unseemly race to see which forum can resolve the same issues first [which would be] prejudicial, to say the least, to the possibility of reasoned decision-making by either forum" (citation omitted)). Where, as here, plaintiffs first selected the Queens Supreme Court as a forum for resolving their claims, they should not be permitted to invoke federal diversity jurisdiction to determine their rights under the same set of agreements that are also at issue in the Queens Action.

Discovery in the Federal Action has not progressed nearly as far as in the Queens Action. At every opportunity, the parties have thwarted the progress in this case by filing

44

unnecessary and acrimonious correspondence. (*See generally*

Docket Sheet, *First Keystone Consultants, Inc. v. Schlesinger

Elec. Contractors, Inc.*, No. 10-CV-696(KAM)(SMG) (E.D.N.Y.).)

Further, in light of the impending accounting in the Queens

Action, and with the parties' consent, the federal court stayed

discovery in the Federal Action with respect to all claims and

counterclaims except for plaintiffs' third cause of action and

defendant's first through fifth counterclaims. (*See* ECF No. 62,

Transcript of proceedings held on 12/22/2010, at 4, 7, 17;

Minute Entry for Telephone Conference held on 12/22/2010; *see

also* Minute Entry for Telephone Conference held on 5/27/2011;

Minute Entry for Status Conference held on 6/28/2011; Minute

Entry for Status Conference held on 9/22/2011.)  To the extent

that the parties still have not conducted the accounting ordered

in the Queens Action based on a purported inability or

unwillingness to pay for the accounting, the same purported

financial infirmity would likely exist in the Federal Action,

where an accounting would be required to determine the amount of

plaintiffs' claims.

     In sum, upon careful examination of the relative

progress of the state and federal proceedings, the court finds

that the Queens Action, which was filed long before the Federal

Action, is far more advanced.  *See De Cisneros*, 871 F.2d at 308

(noting that "the relative progress of the federal and state

proceedings must be carefully examined" and affirming district court's decision to abstain even though that court was "closely involved in the discovery process"). Thus, the filing order and progress in the Queens Action weigh strongly in favor of abstention. *See, e.g.*, *Telesco*, 765 F.2d at 363 (where the concurrent state court actions consisted of seven years of proceedings including discovery involving an audit, several interlocutory decisions, and a preliminary injunction, the Second Circuit found, "[w]ith this history, it hardly seems wise to permit [the] plaintiff to start anew in federal court").

### v. Governing Law

Turning to the fifth *Colorado River* factor regarding governing law, the Federal Action invokes this court's diversity jurisdiction and involves only claims arising under state law. The Second Circuit has noted that "[a]s all diversity suits raise issues of state law, their presence does not weigh heavily in favor of surrender of jurisdiction." *Arkwright-Boston*, 762 F.2d at 211. Where, as here, "the state law issues are neither novel nor particularly complex, the absence of federal claims weighs only slightly in favor of abstention." *Carruthers v. Flaum*, 388 F. Supp. 2d 360, 377 (S.D.N.Y. 2005); *see also Vill. of Westfield*, 170 F.3d at 124 ("[T]he absence of federal issues does not strongly advise dismissal, unless the state law issues are novel or particularly complex.").

### vi. Protection of Federal Plaintiffs' Rights

The sixth *Colorado River* factor is whether the state court proceeding will adequately protect the rights the plaintiffs are seeking to vindicate in the federal lawsuit. Specifically, the court must determine whether "the parallel state-court litigation will be an adequate vehicle for the complete and prompt resolution of the issues between the parties." *Moses H. Cone*, 460 U.S. at 28.

The court has no doubt that the Queens Action will adequately protect plaintiffs' procedural and substantive rights and provide a fair forum that will promptly resolve the parties' claims. Plaintiffs have not identified any conceivable jeopardy or prejudice to their rights should their claims be decided by the Queens court rather than this court.

Further, plaintiffs' confidence in the Queens Supreme Court is evidenced in their filing of lawsuits in that forum, including one as recently as February 2011. (*See* Summons with Notice, *Solomon v. Siemens Indus., Inc.*, Index No. 4636/2011 (N.Y. Sup. Ct. Queens Cnty. Feb. 23, 2011) (subsequently removed by the defendant to the United States District Court for the Eastern District of New York and assigned docket number 11-CV-1321(DLI)(SMG)).) Accordingly, the sixth factor weighs in favor of abstention.

### vii. Other Factors

In addition to the six factors already discussed, some courts considering whether to abstain under *Colorado River* have found "that the vexatious or reactive nature of either the federal or the state litigation may influence the decision whether to defer to a parallel state litigation." *Moses H. Cone*, 460 U.S. at 17 n.20. In *Telesco v. Telesco Fuel & Masons' Materials, Inc.*, 765 F.2d 356, 363 (2d Cir. 1985), for example, the Second Circuit concluded that abstention was appropriate where the same party was the plaintiff in both the state and federal actions, and the plaintiff had filed the federal action after suffering some failures in the earlier state action.

Similarly, plaintiffs in this case filed both the Queens Action and the instant Federal Action, as well as two other actions in Nassau County and Bronx County Supreme Court, all relating to or arising out of the same universe of Projects and agreements among the same parties presently before the Queens court. (*See* ECF No. 142-7, Verified Complaint, *First Keystone Consultants, Inc. v. Schlesinger Elec. Contractors, Inc.*, Index. No. 22828/2007 (N.Y. Sup. Ct. Nassau Cnty. Dec. 20, 2007); ECF No. 142-2, Verified Complaint, *First Keystone Consultants, Inc. v. N.Y. City Dep't of Envtl. Prot.*, Index No. 303366/2010 (N.Y. Sup. Ct. Bronx Cnty. Apr. 23, 2010).) In addition, plaintiffs have asserted cross-claims or counterclaims

in at least two other actions in New York federal courts also relating to the same Projects and agreements in the Queens Action. *See, e.g., DDR Constr. Servs., Inc. v. Siemens Indus., Inc.*, No. 09-CV-9605(ALC)(AGP) (S.D.N.Y.); *Solomon v. Siemens Indus. Inc.*, No. 11-CV-1321(DLI)(SMG) (E.D.N.Y.). Although it was SEC that first asserted cross-claims against FKC in the Queens Action, FKC did not hesitate to assert counterclaims against SEC. Moreover, as SEC asserts, the timing of the instant Federal Action is highly suspect, as it was filed only six weeks after SEC obtained a judgment in Kings County Supreme Court against plaintiffs confirming an arbitration award of $545,147.48. (Def. Mem. at 3, 20; Kalish Decl. Ex. R, Order and Judgment, dated 1/6/2010.)

In opposition to defendant's motion to dismiss pursuant to *Colorado River*, plaintiffs claim that they "have informed the Queens court that they have no desire to pursue that action further because they understand that the original defendants in that case, [DDR], . . . have no funds or assets from which to satisfy a potential future judgment." (Pl. Opp. at 1.) Nevertheless, given the numerous cross-claims, third-party claims, and counterclaims asserted and the thousands of pages of discovery exchanged in the Queens Action, and after more than six years of litigation, plaintiffs cannot simply dismiss that lawsuit and start anew in this forum merely because

the parties they originally sued in the Queens Action have run
out of funds.  Plaintiffs have previously demonstrated a
willingness to dismiss claims either because they are
duplicative or for other strategic reasons where it suited them.
(*See, e.g.*, Bronx 11/1/2010 Order (noting that FKC "concede[d]
the field, by withdrawing its second cause of action" against
SEC upon SEC's motion to dismiss on the ground that there were
prior actions pending between the same parties for the same
relief in Queens County and the Eastern District of New York).)
Such willingness to commence and dismiss lawsuits for strategic
purposes is vexatious, increases the risk of piecemeal
litigation, and wastes the resources of this court and others
that must untangle plaintiffs' poorly pleaded web of interwoven
claims.

\*    \*    \*

Based on the foregoing analysis, the court finds that
*Colorado River* abstention is appropriate in this case.  Despite
the strong presumption against surrendering federal
jurisdiction, the *Colorado River* factors demonstrate that this
is an extraordinary case in which the interests of "conservation
of judicial resources and comprehensive disposition of
litigation" weigh heavily in favor of abstention.  *Colorado
River*, 424 U.S. at 817.  The fundamental issue in both the
Queens Action and the Federal Action is the entitlement to and

amount of funds derived from the Projects through a series of
interrelated agreements. Four of the six *Colorado River* factors
weigh in favor of abstention: the court has not asserted
jurisdiction over a res; the risk of piecemeal litigation is
present and significant; the Queens Action was filed first and
has advanced far beyond the Federal Action; and the Queens
Action will adequately protect plaintiffs' rights. Two factors
that do not clearly favor abstention must be deemed to weigh
against abstention: the convenience of the federal forum and the
governing law. Moreover, it appears that plaintiffs "have used
the courts as a forum in which to vent their deep hostilities,"
further weighing in favor of abstention. *Telesco*, 765 F.2d at
359. Accordingly, SEC's motion to dismiss the Complaint
pursuant to the *Colorado River* abstention doctrine is granted.[16]

Plaintiffs' first, second, and third causes of action
are dismissed. In addition, because SEC's sixth, seventh,

_____

[16] In dismissing the Complaint, the court notes that the Supreme Court has
rejected any distinction between a stay of federal litigation and an outright
dismissal for purposes of *Colorado River* abstention. *See Moses H. Cone*, 460
U.S. at 27-28 (noting that "a stay is as much a refusal to exercise federal
jurisdiction as a dismissal" because the decision to grant a stay
"necessarily contemplates that the federal court will have nothing further to
do in resolving any substantive part of the case"); *accord Burnett v.
Physician's Online, Inc.*, 99 F.3d 72, 77 (2d Cir. 1996) ("There is no
difference between a stay and a dismissal for purposes of the *Colorado River*
doctrine." (citing *Bethlehem Contracting Co. v. Lehrer/McGovern, Inc.*, 800
F.2d 325, 327 n.1 (2d Cir. 1986))).

eighth, and ninth counterclaims are necessarily related to plaintiffs' claims, those claims are also dismissed.[17]

## II.  Failure to Join Necessary Party

SEC seeks in the alternative to dismiss plaintiff's Complaint pursuant to Federal Rule of Civil Procedure 12(b)(7), arguing that DDR is an indispensible party under Federal Rule of Civil Procedure 19.  (Def. Mem. at 20-23.)  The court need not reach this issue because the court has already determined that all of plaintiffs' remaining claims must be dismissed.

## CONCLUSION

For the reasons set forth above, defendant's motion to dismiss plaintiffs' Complaint is granted.  Accordingly, plaintiffs' first, second, and third causes of action, as well as defendant's sixth, seventh, eighth, and ninth counterclaims, are dismissed.  Having determined that defendant's remaining counterclaims relate to a separate arbitration judgment and

---

[17] The parties agree that SEC's first through fifth counterclaims relate to a separate arbitration judgment entered by the New York Supreme Court, Kings County, and that the issues therein are not being litigated elsewhere.  (ECF No. 102-1, Declaration of Richard H. Agins in Opposition to Motion of Schlesinger Electrical Contractors Inc. to Dismiss the Complaint, dated 7/18/2011, ¶¶ 4, 9; Def. Mem. at 24; Def. Reply at 7-8.)  Although SEC could have filed the claims in New York Supreme Court, this court will retain jurisdiction over those counterclaims.  *See, e.g.*, *Nancy Johnson Corp. v. Valvo*, No. 90-CV-1364, 1990 U.S. Dist. LEXIS 7320, at *3-4 (S.D.N.Y. June 15, 1990) (dismissing only defendants' counterclaims based on *Colorado River* abstention); *Ramirez v. Platt*, No. 87-CV-4128, 1988 U.S. Dist. LEXIS 13315, at *13 (E.D.N.Y. Nov. 23, 1988) (dismissing only one of defendant's counterclaims pursuant to *Colorado River* abstention).  Those counterclaims will be addressed by the court in a separate decision on SEC's pending motion for summary judgment.  (*See* ECF No. 137, Motion for Summary Judgment, filed 2/13/2012.)

there is no just reason for delay, the court respectfully requests the Clerk of the Court to enter judgment dismissing plaintiffs' first, second, and third causes of action, and defendant's sixth, seventh, eighth, and ninth counterclaims. *See* Fed. R. Civ. P. 54(b). By April 30, 2012, the parties shall jointly seek clarification from the Queens County Supreme Court as to whether the funds presently in the registry of the Clerk of this court are subject to the Queens court's injunction, shall jointly report back to this court as to whether or not the funds should be transferred to the Queens County Clerk, and shall submit copies of any orders by the Queens court on this issue.

**SO ORDERED.**

Dated:   Brooklyn, New York
         March 28, 2012

                                  _____/s/_____
                                  **KIYO A. MATSUMOTO**
                                  United States District Judge
                                  Eastern District of New York