UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------X
FIRST KEYSTONE CONSULTANTS, INC.
ROBERT H. SOLOMON and
JANE SOLOMON

        Plaintiffs,

        -against-

SCHLESINGER ELECTRICAL
CONTRACTORS, INC.

        Defendant.
---------------------------------X

**MEMORANDUM & ORDER**

10-CV-696(KAM)(SMG)

**KIYO A. MATSUMOTO, United States District Judge:**

        Presently before the court is a motion filed by defendant and counterclaim-plaintiff Schlesinger Electrical Contractors, Inc. ("SEC" or "defendant") seeking summary judgment on its first through fifth counterclaims against plaintiffs and counterclaim-defendants First Keystone Consultants, Inc. ("FKC"), Robert H. Solomon and Jane Solomon (together, the "Solomons," and collectively with FKC, "the FKC Plaintiffs"). (ECF No. 137-1, Notice of Motion for Partial Summary Judgment, dated 12/15/2011 ("Not. of Mot.").) For the reasons set forth below, SEC's motion for summary judgment is granted.

<b><u>BACKGROUND</u></b>

        The following facts are undisputed unless noted. The court has considered whether the parties have proffered admissible evidence in support of their positions and has viewed

the facts in the light most favorable to the nonmoving FKC Plaintiffs.

In support of its motion, SEC filed an initial memorandum of law (ECF No. 137-32, Memorandum of Law of Defendant-Counterclaimant Schlesinger Electrical Contractors, Inc. in Support of Motion for Summary Judgment on its First-Fifth Counterclaims, dated 12/15/2011 ("Def. Mem.")); a reply memorandum of law (ECF No. 138-15, Reply Memorandum of Law of Defendant-Counterclaimant Schlesinger Electrical Contractors, Inc. in Support of Motion for Summary Judgment on its First-Fifth Counterclaims, dated 2/10/2012 ("Def. Reply Mem.")); a statement of material facts not in dispute pursuant to Local Civil Rule 56.1 (ECF No. 137-33, Statement of Material Facts of Schlesinger Electrical Contracts, Inc., dated 12/15/2011 ("DSOF")); two declarations supported by exhibits by Jacob Levita, the president of SEC, stating that he is "fully familiar with the facts and circumstances set forth" therein (ECF No. 137-3, Declaration of Jacob Levita in Support of Schlesinger's Motion for Partial Summary Judgment, dated 12/15/2011 ("Levita Decl.") ¶ 1; ECF No. 138-2, Reply Declaration of Jacob Levita in Support of Schlesinger's Motion for Partial Summary Judgment, dated 2/9/2012 ("Levita Reply Decl.") ¶ 1); and two declarations by Melvin Kalish, Esq., SEC's counsel, stating that he is "fully familiar with the facts and circumstances set forth" therein and

attaching several exhibits (ECF No. 137-2, Declaration of Melvin
J. Kalish in Support of Schlesinger Motion for Partial Summary
Judgment, dated 12/15/2011 ("Kalish Decl.") ¶ 1; ECF No. 138-1,
Reply Declaration of Melvin J. Kalish in Support of Schlesinger
Motion for Partial Summary Judgment, dated 2/10/2012 ("Kalish
Reply Decl.") ¶ 1).

   In opposing SEC's motion for summary judgment, the FKC
Plaintiffs filed a memorandum of law, which attached several
exhibits.  (ECF No. 139, Plaintiffs' Opposition to Defendant's
Motion for Partial Summary Judgment, dated 1/16/2012 ("Pl.
Opp.").)  The FKC Plaintiffs did not file a counter Rule 56.1
statement or any declaration or other admissible evidence in
opposition to SEC's motion.

   This court relies on the undisputed material facts set
forth in SEC's Rule 56.1 statement because the FKC Plaintiffs
either have admitted such facts or have not disputed the facts
with citations to admissible evidence.  Pursuant to Local Civil
Rule 56.1(b), a party opposing a motion for summary judgment
must include with its opposition papers "a correspondingly
numbered paragraph responding to each numbered paragraph in the
statement of the moving party, and if necessary, additional
paragraphs containing a separate, short and concise statement of
additional material facts as to which it is contended that there
exists a genuine issue to be tried."  Here, however, the

opposition papers submitted by the FKC Plaintiffs failed to
include a statement pursuant to Local Civil Rule 56.1(b) or
respond to each numbered paragraph in SEC's Rule 56.1 statement.
Moreover, the FKC Plaintiffs have failed to offer any admissible
evidence in support of its opposition to SEC's motion.
Accordingly, the court is entitled to conclude that the facts
asserted in SEC's Rule 56.1 statement are uncontested. *T.Y. v.
N.Y. City Dep't of Educ.*, 584 F.3d 412, 418 (2d Cir. 2009)
(citing *Gubitosi v. Kapica*, 154 F.3d 30, 31 n.1 (2d Cir. 1998)
(per curiam)); *see also Giannullo v. City of New York,* 322 F.3d
139, 140 (2d Cir. 2003) ("If the opposing party . . . fails to
controvert a fact so set forth in the moving party's Rule 56.1
statement, that fact will be deemed admitted.").

## I.    The Parties

SEC is a New York corporation that performs public and
private commercial and industrial electrical work, both as a
prime contractor and as a subcontractor.  (DSOF ¶¶ 1-3; Levita
Decl. ¶¶ 4-6; ECF No. 1, Complaint filed 2/17/2010 ("Compl.")
¶ 10.)  FKC is a Pennsylvania corporation authorized to do
business in New York.  (DSOF ¶¶ 4-5; Kalish Decl. Ex. Q,
Testimony of Robert Solomon before Arbitration Panel, dated
6/30/2009 ("Robert Solomon 6/30/2009 Arb. Tr.") at 1053-54;
Compl. ¶ 8.)  Robert Solomon and Jane Solomon are husband and
wife, and are residents of Florida.  (DSOF ¶ 8; Levita Decl.

4

¶ 8; Kalish Decl. ¶ 6; ECF No. 141, [Solomons'] Response to Order to Show Cause, filed 2/29/2012, ¶ 5; Compl. ¶¶ 8-9.)  Jane Solomon is FKC's president, and she owns 100 percent of FKC's shares.  (DSOF ¶¶ 6-7; Levita Decl. ¶ 8; Kalish Decl. ¶ 6; Compl. ¶ 8.)  Robert Solomon is FKC's vice president.  (DSOF ¶ 8; Levita Decl. ¶ 8; Compl. ¶ 8.)  FKC's letterhead lists as its business address 1629 Southeast Ballantrae Boulevard, Port St. Lucie, Florida, which is the Solomons' personal home address.  (DSOF ¶¶ 133-34; Kalish Decl. Ex. Z, Letter dated 12/31/2007 on FKC Letterhead, at 1; Kalish Decl. Ex. H, Deposition of Jane Solomon, dated 6/13/2011 ("Jane Solomon 6/13/2011 Dep.") at 5-6.)

Jane Solomon testified that she gave Robert Solomon permission to sign documents on behalf of FKC, including authorizing him to sign her name to documents.  (DSOF ¶ 131; Kalish Decl. Ex. H, Jane Solomon 6/13/2011 Dep. at 150; Kalish Decl. Ex. H, Deposition of Jane Solomon, dated 4/14/2010 ("Jane Solomon 4/14/2010 Dep.") at 21-22.)  Jane Solomon further testified that she and Robert Solomon loaned money to FKC whenever they determined that FKC needed money, and that they received repayment of their loans from FKC "when we had money." (DSOF ¶ 132; Kalish Decl. Ex. H, Jane Solomon 6/13/2011 Dep. at 141-42.)  The Solomons and FKC did not have any signed

agreements regarding such loans.  (Kalish Decl. Ex. H, Jane
Solomon 6/13/2011 Dep. at 140-41.)

## II.   The Coney Island Joint Venture

On or about January 21, 2004, SEC and FKC entered into
a joint venture agreement to bid on and perform work as an
electrical subcontractor in connection with a New York City
Department of Environmental Protection project on Coney Island
(the "Coney Island Joint Venture").  (Levita Decl. ¶¶ 10-11.)
Pursuant to the joint venture agreement, SEC and FKC agreed to
share in all profits and losses of the Coney Island Joint
Venture as fifty-fifty partners.  (DSOF ¶ 10; Levita Decl.
¶ 11.)

Between July 28, 2004 and December 28, 2004, FKC and
SEC each took $964,000 in advance draws against future profits
of the Coney Island Joint Venture.  (DSOF ¶ 13; Levita Decl.
¶¶ 14-15.)  The last advance draw against future profits was
made on December 28, 2004.  (Levita Decl. ¶ 16.)  Ultimately,
however, the Coney Island Joint Venture earned only
$1,075,563.04 in net profits.  (DSOF ¶ 16; Kalish Decl. Ex. A,
Award of Arbitrators, dated 10/12/2009 ("Arb. Award").)  FKC
failed to return any of the $964,000 in advance draws or to pay
its share of the Coney Island Joint Venture's expenses.  (DSOF
¶¶ 17-20; Levita Decl. ¶¶ 17-20.)

**III. The Arbitration Award and Judgment**

On or about September 12, 2008, SEC served and filed a
Demand for Arbitration on FKC seeking repayment of the excess
amounts drawn by FKC against unearned future profits from the
Coney Island Joint Venture. (DSOF ¶ 21; Levita Decl. ¶ 27.) On
or about October 12, 2009, a three-member arbitration panel
found that FKC had received $426,218.48 in excess advance
distributions of profit from the Coney Island Joint Venture, and
that FKC had breached its fiduciary obligations to SEC,
resulting in damages of $67,500.00. (DSOF ¶¶ 23, 26; Levita
Decl. ¶ 28; Kalish Decl. Ex. A, Arb. Award at 2.) The
arbitration panel issued an award (the "Arbitration Award") in
favor of SEC and against FKC in the amount of $493,718.48 with
interest at a rate of five percent from September 24, 2007 to
October 26, 2009, for a total of $545,147.48. (Kalish Decl. Ex.
A, Arb. Award at 2; Levita Decl. ¶ 28.) Interest was to accrue
at a rate of nine percent per annum beginning 30 days after the
award was transmitted to the parties. (Kalish Decl. Ex. A, Arb.
Award at 2; Levita Decl. ¶ 28.)

On or about October 21, 2009, SEC filed an action to
confirm the Arbitration Award in New York Supreme Court, Kings
County. (DSOF ¶ 30; Kalish Decl. ¶ 16; Kalish Decl. Ex. O,
Notice of Petition, filed 10/21/2009.) On or about November 27,
2009, FKC filed a cross-motion seeking to modify the Arbitration

Award, but FKC subsequently withdrew that motion on December 31, 2009.  (DSOF ¶¶ 33-37; Kalish Decl. ¶ 17; Kalish Decl. Ex. B, Order and Judgment, dated 1/6/2010 ("Arb. Judgment"), at 2.)  On January 6, 2010, the Kings County Supreme Court entered a judgment in favor of SEC and against FKC in the amount of $545,147.48 plus interest at nine percent per annum from November 13, 2009 (the "Arbitration Judgment").  (DSOF ¶ 38; Levita Decl. ¶ 30; Kalish Decl. Ex. B, Arb. Judgment at 3.)

SEC has presented the sworn declaration of its president asserting that FKC has not paid any part of the Arbitration Judgment and that SEC has received no payments toward the Arbitration Judgment from any third parties.  (Levita Decl. ¶ 30; Levita Reply Decl. ¶¶ 19-21; DSOF ¶¶ 39, 53.)  The FKC Plaintiffs, on the other hand, assert in their memorandum of law that SEC has collected $1,947.29 against the Arbitration Judgment from FKC's bank account and received $87,500 against the Arbitration Judgment from Siemens Industry, Inc. ("SII"). (Pl. Opp. ¶¶ 4, 13, 35.)  The FKC Plaintiffs, however, have not cited to any admissible evidence to support this assertion.

IV. **Conveyances Challenged by SEC**

A. **Conveyances from FKC to the Solomons before SEC filed the Demand for Arbitration on September 12, 2008**

The financial records submitted by SEC in support of the instant motion demonstrate that FKC made the following

conveyances of money to the Solomons before SEC filed and served FKC with the Demand for Arbitration on September 12, 2008.

Between January 3, 2005 and February 26, 2008, FKC transferred $732,600 to Jane Solomon. (DSOF ¶ 106; Kalish Decl. Exs. J-N, First Keystone General Ledgers as of 12/31/2005, 12/31/2006, 12/31/2007, 12/31/2008, and 12/31/2009 ("FKC 2005-2009 General Ledgers"); Kalish Decl. ¶ 77.) SEC asserts, and FKC has not disputed, that at no time since February 14, 2005, on which date FKC made a single transfer of $500,000 to Jane Solomon, has FKC had sufficient funds in its bank account to satisfy the $545,147.48 Arbitration Award and Judgment obtained by SEC. (DSOF ¶¶ 103-04; Kalish Decl. Ex. J, First Keystone General Ledger as of 12/31/2005 ("FKC 2005 General Ledger") at 1; Kalish Decl. ¶ 73.)

Between August 8, 2005 and December 28, 2006, FKC transferred $44,000 to Robert Solomon. (DSOF ¶ 107; Kalish Decl. Ex. J, FKC 2005 General Ledger; Kalish Decl. Ex. K, First Keystone General Ledger as of 12/31/2006 ("FKC 2006 General Ledger"); Kalish Decl. ¶ 78.)

**B. Conveyances from FKC to the Solomons after SEC filed the Demand for Arbitration on September 12, 2008**

In addition, it is undisputed that the following transfers occurred after SEC filed and served the Demand for Arbitration. On February 26, 2009, FKC transferred $1,000 to

Robert Solomon via check number 2992. (DSOF ¶ 107; Kalish Decl.
Ex. N, First Keystone General Ledger as of 12/31/2009 ("FKC 2009
General Ledger") at 2.) On September 13, 2009, FKC transferred
$2,000 to Jane Solomon via check number 3041. (DSOF ¶ 90;
Kalish Decl. Ex. N, FKC 2009 General Ledger at 4; Kalish Decl.
¶ 50.)

On October 8, 2009, FKC deposited $575,000 into its
bank account. (DSOF ¶¶ 80, 109, 117; Kalish Decl. Ex. F, FKC
Bank of America Combined Statement 10/1/2009 through 10/31/2009
("FKC Oct. 2009 Bank Stmt.") at 3; Kalish Decl. Ex. N, FKC 2009
General Ledger at 4; Kalish Decl. ¶¶ 33, 86, 99 n.10.) The
"description" next to this deposit on FKC's bank statement
states, *inter alia*, "Siemens Energy & Des." (Kalish Decl. Ex.
F, FKC Oct. 2009 Bank Stmt. at 3.) It is undisputed that FKC
received those funds from Siemens Energy & Automation, Inc.
("SEA"), pursuant to a General Release and Settlement Agreement
between FKC and SEA, dated September 23, 2009, which provided,
*inter alia*, that SEA was to pay FKC $750,000, with $575,000 to
be paid by SEA to Robert Solomon within ten business days of
SEA's receipt of a fully executed copy of that agreement, and
the remaining $175,000 to be paid by SEA to Robert Solomon no
later than September 23, 2010. (DSOF ¶¶ 80, 109, 115-17; Pl.
Opp. ¶ 55; Kalish Decl. Ex. R, General Release and Settlement
Agreement by and between SEA and FKC, dated 9/23/2009, ¶ 3;

Kalish Reply Decl. Ex. AA, Response to Information Subpoena by
Siemens Industry, Inc.)

In FKC's Response to SEC's Examination of Judgment
Debtor, which was prepared and reviewed by Jane and Robert
Solomon, and signed by Jane Solomon on April 26, 2010, FKC
denied having entered into an agreement with SII in September
2009. (DSOF ¶¶ 64-65, 118-20; Kalish Decl. Ex. I, Examination
of Judgment Debtor, dated 4/26/2010, Rider; Kalish Decl. ¶¶ 93-
94, 97-98.) In the FKC Plaintiffs' memorandum of law in
opposition to the instant motion, their counsel explains that
"had the question been correctly propounded [by identifying SEA,
rather than SII, as the other party to the agreement], Mrs.
Solomon would have answered that question in the affirmative and
all further, related questions substantively." (Pl. Opp. ¶ 55.)
Nevertheless, the parties agree that SEA was succeeded in
interest by SII. (Kalish Reply Decl. ¶ 48; Compl. ¶ 18; Kalish
Reply Decl. Ex. AA, Response to Information Subpoena by Siemens
Industry, Inc (indicating that Siemens Industry, Inc. was
formerly known as Siemens Energy & Automation, Inc.).)

It is undisputed that neither SEA nor SII ever paid
FKC the additional $175,000 owed pursuant to the General Release
and Settlement Agreement. (Levita Reply Decl. ¶¶ 24-25; Kalish
Reply Decl. ¶¶ 88-93.) According to SEC, this final payment was
never made because FKC breached the General Release and

Settlement Agreement and therefore "was not due any portion of the second installment of $175,000 and would not be paid any portion of the $175,000." (Levita Reply Decl. ¶ 24; Kalish Reply Decl. ¶¶ 80-94.) The FKC Plaintiffs baldly allege in their memorandum of law, without reference to admissible evidence, that instead of paying FKC the $175,000, SII paid $87,500 to SEC, and that such amount should be applied against the Arbitration Judgment owed by FKC. (Pl. Opp. ¶¶ 4, 13, 35.) Through the sworn declaration of its president, however, SEC denies receiving $87,500 in payment against the Arbitration Judgment. (Levita Reply Decl. ¶ 21.)

The undisputed evidence in the record establishes that on October 8, 2009, the same date that FKC received $575,000 from SEA, FKC wired $300,000 to Jane Solomon's bank account. (DSOF ¶¶ 81-84, 111; Kalish Decl. Ex. F, FKC Oct. 2009 Bank Stmt. at 4; Kalish Decl. Ex. G, FKC Teller Log Statement, dated 10/8/2009, at 3; Kalish Decl. Ex. N, FKC 2009 General Ledger at 4; Kalish Decl. Ex. H, Jane Solomon 6/13/2011 Dep. at 62-63; Kalish Decl. ¶¶ 34-36, 86-87.) Jane Solomon testified at her deposition on June 13, 2011 that the October 8, 2009 conveyance of $300,000 from FKC's bank account to her bank account constituted a partial "repayment of loans" that she had made to FKC. (DSOF ¶ 95; Kalish Decl. Ex. H, Jane Solomon 6/13/2011 Dep. at 62-63; *see also* Kalish Decl. Ex. N, FKC 2009 General

Ledger at 8-9 (listing September 13, October 8, and October 21, 2009 transactions, among others, under "Loan Payable – J. Solomon").)

On October 21, 2009, FKC transferred $15,000 to Jane Solomon's bank account via check number 3054. (DSOF ¶¶ 92, 112; Kalish Decl. Ex. N, FKC 2009 General Ledger at 4; Kalish Decl. ¶¶ 50, 88.) Following this conveyance to Jane Solomon, FKC's bank account had a closing balance of negative $9,416.24. (DSOF ¶ 97; Kalish Decl. Ex. N, FKC 2009 General Ledger at 4; Kalish Decl. ¶ 61.)

### C. Additional Expenditures

The financial records submitted by SEC in support of the instant motion also establish the following additional undisputed expenditures by FKC or the Solomons. Between 2005 and 2009, FKC made payments to Avalon Realty in the total amount of $282,171.18 for renting an apartment in the Avalon Riverview Apartment Complex, located at 201 50th Avenue in Long Island City, New York. (DSOF ¶¶ 135, 137-38; Kalish Decl. Exs. J-N, FKC 2005-2009 General Ledgers; Kalish Decl. Ex. T, Avalon Riverview Description as of 7/21/2010; Kalish Decl. ¶¶ 112, 115; Pl. Opp. ¶¶ 51-53.) Although the FKC Plaintiffs assert in their memorandum of law, without support, that the Solomons "utilize[ed] the apartment largely as an office" (Pl. Opp. ¶ 53), Robert Solomon previously testified during his deposition

on April 14, 2010 that he and Jane Solomon "personally" rented the apartment on 50th Avenue in Long Island City and that "First Keystone does not rent that apartment" (DSOF ¶ 136; Kalish Decl. Ex. Q, Deposition of Robert Solomon, dated 4/14/2010 ("Robert Solomon 4/14/2010 Dep.") at 550; Kalish Decl. ¶ 113.)

Between 2006 and 2009, FKC made payments to Robert Solomon's cardiologist, Dr. Martin L. Fox, in the total amount of $1,919.76. (DSOF ¶¶ 139-40, 142; Kalish Decl. Exs. J-N, FKC 2005-2009 General Ledgers; Kalish Decl. Ex. H, Jane Solomon 6/13/2011 Dep. at 36; Kalish Decl. ¶¶ 116-17.) In addition, on October 19, 2009, FKC paid Dr. Jeffrey L. Marx, a dermatologist, $465 via check number 3051. (DSOF ¶¶ 139-41; Kalish Decl. Ex. N, FKC 2009 General Ledger at 4; Kalish Decl. Ex. H, Jane Solomon 6/13/2011 Dep. at 36; Kalish Decl. ¶¶ 116-17.)

Between 2006 and 2007, FKC made payments to Robert Solomon's son, Neil Solomon, in the total amount of $113,000. (DSOF ¶¶ 143, 148-49; Kalish Decl. Exs. J-N, FKC 2005-2009 General Ledgers; Kalish Decl. Ex. H, Jane Solomon 6/13/2011 Dep. at 55; Kalish Decl. ¶ 124.) Jane Solomon testified that Neil Solomon worked for Schlesinger-Siemens Electrical, LLC, but did not perform any work for FKC or send invoices to FKC. (DSOF ¶¶ 144-47; Kalish Decl. Ex. H, Jane Solomon 6/13/2011 Dep. at 55; Kalish Decl. ¶¶ 120-22.)

The Solomons have made payments by personal check to Richard Agins, Esq. for representing FKC in at least one action in which the Solomons are not named as parties. (DSOF ¶¶ 152-54; Kalish Decl. Ex. S, Questionnaire of Judgment Debtor, dated 7/14/2010; Kalish Decl. ¶¶ 131-33; Pl. Opp. ¶ 50.)

The FKC Plaintiffs have advised the court that "FKC has no funds available to pay its other liabilities." (Pl. Opp. ¶ 50; DSOF ¶ 54; Kalish Decl. ¶ 56.)

## V.    Procedural History

The FKC Plaintiffs commenced the instant action on February 17, 2010 seeking, *inter alia*, distribution of funds allegedly owed to FKC by SEC.[1] (*See generally* Compl.)  On March 12, 2010, SEC filed an answer and counterclaims, alleging, *inter alia*, breach of contract, breach of fiduciary duty, and fraudulent conveyances, and seeking to pierce FKC's corporate veil. (*See generally* ECF No. 10, Answer, Counterclaims and Cross-Claims of SEC and Levita, dated 3/12/2010 ("SEC Counterclaims").)

---

[1] The Complaint also asserted claims against J.P. Morgan Chase Bank, N.A., s/h/a JPMorgan Chase & Co. ("Chase Bank") and Jacob Levita ("Levita"), a principal officer of SEC. (Compl. ¶¶ 10-12, 24-25, 29, 31-33.)  On December 15, 2010, pursuant to an agreement among the parties, the court dismissed with prejudice all claims against defendant Chase Bank – including the FKC Plaintiffs' fourth cause of action and SEC's first and second cross-claims – after Chase Bank deposited $598,716.14 with the registry of the Clerk of this court. (Order Granting Motion to Dismiss, dated 12/15/2010; ECF No. 57, Clerk's Judgment dated 12/15/2010.)  On January 3, 2011, pursuant to a stipulation by the parties, all claims against Levita were dismissed with prejudice. (ECF No. 61, Stipulation of Dismissal, dated 12/28/2010; Order dated 1/3/2011.)

On March 28, 2012, the court granted SEC's motion to dismiss the FKC Plaintiffs' complaint, pursuant to the doctrine of abstention articulated by the United States Supreme Court in *Colorado River Water Conservation District v. United States*, 424 U.S. 800 (1976), based on the concurrent parallel litigation in New York Supreme Court, Queens County. (ECF No. 144, Memorandum and Order, dated 3/28/2012.) *See First Keystone Consultants, Inc. v. Schlesinger Elec. Contractors, Inc.*, No. 10-cv-696, 2012 U.S. Dist. LEXIS 43092 (E.D.N.Y. Mar. 28, 2012). The court entered judgment dismissing all of the FKC Plaintiffs' remaining causes of action, as well as SEC's sixth, seventh, eighth, and ninth counterclaims. (ECF No. 145, Clerk's Judgment dated 3/29/2012.) As the court noted, the only claims still pending in the instant case are SEC's first through fifth counterclaims. *See First Keystone*, 2012 U.S. Dist. LEXIS 43092, at *65-66 n.17.

By motion filed on February 13, 2012, SEC now seeks summary judgment on its first through fifth counterclaims, which allege that FKC made certain fraudulent conveyances to the Solomons, and that SEC is entitled to pierce FKC's corporate veil and recover from the Solomons personally for the Arbitration Judgment. (*See generally* Not. of Mot.; Def. Mem.)

## DISCUSSION

### I.   Standard of Review

####    A.   Summary Judgment Standard

Pursuant to Federal Rule of Civil Procedure 56, summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original). "A fact is material if it might affect the outcome of the suit under the governing law." *Fincher v. Depository Trust & Clearing Corp.*, 604 F.3d 712, 720 (2d Cir. 2010) (quoting *Roe v. City of Waterbury*, 542 F.3d 31, 35 (2d Cir. 2008)). "An issue of fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* Moreover, no genuine issue of material fact exists "unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (internal citations omitted).

The moving party carries the burden of demonstrating the absence of a genuine issue of material fact. *FDIC v. Great Am. Ins. Co.*, 607 F.3d 288, 292 (2d Cir. 2010) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). The court must construe the facts in the light most favorable to the nonmoving party, and all reasonable inferences and ambiguities must be resolved against the moving party. *Id.*

Nevertheless, the nonmoving party may not rest merely on allegations or denials but must instead set forth specific facts showing a genuine issue for trial. *See id.* ("To defeat a summary judgment motion, the non-moving party must do more than simply show that there is some metaphysical doubt as to the material facts, and may not rely on conclusory allegations or unsubstantiated speculation.") (citations omitted). Such facts must be supported by "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A). An affidavit or declaration used to oppose a motion for summary judgment "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4); *see Attorney Gen. of the United States v. Irish N. Aid Comm.*, 668 F.2d 159,

162 (2d Cir. 1982) (holding that a "conclusory affidavit" filed by an affiant with an admitted lack of personal knowledge was insufficient to create a genuine issue of material fact that would defeat a motion for summary judgment); *Berkeley v. Clark Equip. Co.*, 22 F.R.D. 487, 488 (E.D.N.Y. 1958) (finding that the affidavit of an attorney that "fails to show affirmatively that the affiant is competent to testify to the matters stated therein" is insufficient to defeat a motion for summary judgment).

## II. Application

SEC seeks summary judgment as to its first five counterclaims. (*See* Not. of Mot.) SEC's first through fourth counterclaims allege that certain conveyances from FKC to Robert Solomon and Jane Solomon should be set aside as fraudulent conveyances under Article 10 of the New York Debtor and Creditor Law ("NYDCL"). SEC's fifth counterclaim seeks to pierce FKC's corporate veil and hold the Solomons jointly and severally liable for FKC's obligations to SEC.

### A. Fraudulent Conveyances

In order for a party to challenge a conveyance as fraudulent pursuant to the NYDCL, the party must be a creditor within the meaning of that statute. Section 270 of the NYDCL defines a creditor as "a person having any claim, whether matured or unmatured, liquidated or unliquidated, absolute,

fixed or contingent." NYDCL § 270.

It is undisputed that SEC has been a "creditor" of FKC with a matured debt since the arbitration panel issued the Arbitration Award in favor of SEC and against FKC on or about October 12, 2009. (DSOF ¶¶ 26-28; *see also* Pl. Opp. ¶ 3.)

SEC also asserts that it has had an unmatured claim against FKC since December 28, 2004, when, as the evidence establishes, FKC took its last advance draw against the profits of the Coney Island Joint Venture. (Def. Mem. at 11, 14-15; Def. Reply Mem. at 9-10; Levita Decl. ¶ 16; DSOF ¶¶ 14-20.) FKC, on the other hand, argues that "the large majority of the conveyances cited by Defendant [in its motion papers] occurred *years before* the [Arbitration Judgment] and before Keystone was a debtor, and therefore, must be disregarded as a matter of law." (Pl. Opp. ¶ 21.)

An individual becomes a creditor with an unmatured claim pursuant to NYDCL section 270 as of the time his claim accrues. *See, e.g., United States v. Red Stripe, Inc.*, 792 F. Supp. 1338, 1342-43 (E.D.N.Y. 1992) (in an action to set aside a fraudulent conveyance pursuant to NYDCL section 273, the court held that the government was a creditor of the defendant corporation as of the date that the defendant's tax liability became due, even though no tax liability was assessed, because that was the date the government's claim accrued); *Steuben*

*Foods, Inc. v. Country Gourmet Foods, LLC*, No. 08-CV-561S, 2009
U.S. Dist. LEXIS 91219, at *30 (W.D.N.Y. Sept. 30, 2009)
("Plaintiff's status as a future creditor subject to the
protection of [NYDCL] § 276 was established upon the accrual of
Plaintiff's breach of contract claim."). Here, SEC's claims
against FKC accrued as of the time FKC refused to repay the
advance draws against profit it had received from the Coney
Island Venture and SEC was forced to pay FKC's share of the
ongoing expenses of the Coney Island Venture with its own funds.

To the extent that FKC disputes that it was an
unmatured creditor of SEC prior to the Arbitration Judgment, FKC
is collaterally estopped from raising this defense. The
doctrine of collateral estoppel "bars a party from relitigating
in a subsequent proceeding an issue of fact or law that was
clearly raised in a prior action where the party to be precluded
. . . had a full and fair opportunity to litigate the issue, and
a decision on that issue was necessary to support a valid and
final judgment on the merits." *Envtl. Def. v. U.S. Envtl. Prot.
Agency*, 369 F.3d 193, 202 (2d Cir. 2004) (citations omitted).
The arbitration proceeding and the subsequent litigation in
Kings County Supreme Court to confirm the arbitration award
necessarily considered whether FKC owed SEC money as a result of
FKC's advance draws against profits from the Coney Island Joint
Venture. The panel of arbitrators found, and the Kings County

Supreme Court later confirmed, that FKC owed SEC, *inter alia*, $426,218.48 in excess advance profits drawn against the Coney Island Joint Venture. (Kalish Decl. Ex. A, Arb. Award at 2; Kalish Decl. Ex. B, Arb. Judgment.) FKC has not suggested that it lacked a full and fair opportunity to litigate the issue of its liability to SEC in the arbitration and subsequent judicial confirmation proceedings. Thus, the court finds that SEC has been a creditor of FKC since at least December 28, 2004, the date on which FKC received its last advance draw against profits.

### 1. Constructive Fraud

Pursuant to the NYDCL, a conveyance by a debtor is deemed constructively fraudulent if it is made without fair consideration and, *inter alia*, if one of the following conditions is met: (1) the conveyor is insolvent or will be rendered insolvent by the conveyance in question, NYDCL § 273; (2) the conveyor is a defendant in an action for money damages or a judgment in such an action has been docketed against the conveyor, and the conveyor fails to satisfy the judgment, NYDCL § 273-a; (3) the conveyor is engaged in or is about to engage in a business transaction for which its remaining property constitutes unreasonably small capital, NYDCL § 274; or (4) the conveyor believes that it will incur debts beyond its ability to pay, NYDCL § 275. *Sharp Int'l Corp. v. State St. Bank & Trust*

*Co.*, 403 F.3d 43, 53 (2d Cir. 2005). None of these sections of the NYDCL requires the plaintiff to show that the defendant acted with actual intent to defraud. *Ostashko v. Ostashko*, No. 00-CV-7162, 2002 U.S. Dist. LEXIS 27015, at *64 (E.D.N.Y. Dec. 10, 2002).

### i. Fair Consideration

An essential element of any claim of constructive fraud pursuant to NYDCL sections 273, 273-a, 274, and 275 is a lack of fair consideration. The term "fair consideration" is defined in NYDCL section 272, which provides that fair consideration is given for property when (1) "in exchange" for such property, "a fair equivalent therefor" is conveyed or an antecedent debt is satisfied "in good faith"; or (2) such property is received "in good faith" to secure a present advance or an antecedent debt in an amount "not disproportionately small" when compared with the value of the property obtained.

Although satisfaction of a preexisting debt generally constitutes fair consideration, courts recognize an exception to this rule where the transferee is an officer, director, or major shareholder of the transferor. *Sharp Int'l Corp.*, 403 F.3d at 54. Under New York law, "preferences to a debtor corporation's shareholders, officers, or directors are deemed not to be transfers for fair consideration." *HBE Leasing Corp. v. Frank*, 48 F.3d 623, 634 (2d Cir. 1995); *see also Laco X-Ray Sys., Inc.*

23

*v. Fingerhut*, 453 N.Y.S.2d 757, 762 (N.Y. App. Div. 2d Dep't
1982) (finding fair consideration lacking when assets of
corporation "were conveyed in such a manner that its principals
. . . became preferred creditors to the detriment of other
creditors"); *Farm Stores, Inc. v. Sch. Feeding Corp.*, 477
N.Y.S.2d 374, 378 (N.Y. App. Div. 2d Dep't 1984)
("[P]referential transfers to directors, officers and
shareholders of insolvent corporations in derogation of the
rights of general creditors do not fulfill the good-faith
requirement of the Debtor and Creditor Law.").

Here, it is undisputed that Jane Solomon and Robert
Solomon are the president and vice president, respectively, of
FKC. (DSOF ¶¶ 7-8; Levita Decl. ¶ 8.) It is further undisputed
that Jane Solomon is the sole owner of 100 percent of FKC's
shares. (DSOF ¶ 6; Levita Decl. ¶ 8.) Moreover, it is
undisputed that between January 2005 and October 2009, FKC
transferred at least $1,049,600 to Jane Solomon and $45,000 to
Robert Solomon. (DSOF ¶¶ 106-07; *see* Kalish Decl. Exs. J-N, FKC
2005-2009 General Ledgers.) Of those amounts, $317,000 was
transferred from FKC to Jane Solomon in September and October
2009, and $1,000 was transferred from FKC to Robert Solomon on
February 26, 2009. (DSOF ¶¶ 106-07; *see* Kalish Decl. Ex. N, FKC
2009 General Ledger.) According to the evidence presented,
those transfers constituted repayments of loans that the

Solomons had made to FKC.  (DSOF ¶ 95; Kalish Decl. Ex. H, Jane Solomon 6/13/2011 Dep. at 62-63; *see also* Kalish Decl. Ex. N, FKC 2009 General Ledger at 8-9.)  Under New York law, such conveyances from FKC to its officers and sole shareholder, even as repayments of a preexisting debt, are deemed to lack fair consideration as a matter of law.  *HBE Leasing Corp.*, 48 F.3d at 634.

### ii.    Constructive Fraud Under NYDCL § 273-a (Fourth Counterclaim)

SEC seeks summary judgment on its fourth counterclaim to the extent that it alleges that in September and October 2009, FKC fraudulently conveyed $317,000 to Jane Solomon while FKC was a defendant in an action for money damages, in violation of NYDCL section 273-a.[2]  (Not. of Mot. ¶ d; Def. Mem. at 4-11; SEC Counterclaims ¶¶ 121-34.)

To prevail on a claim under NYDCL section 273-a, a plaintiff must establish that (1) the conveyance was made without fair consideration; (2) the conveyor was, at the time of the conveyance, "a defendant in an action for money damages" or

---

[2] NYDCL section 273-a provides:

> Every conveyance made without fair consideration when the person making it is a defendant in an action for money damages or a judgment in such an action has been docketed against him, is fraudulent as to the plaintiff in that action without regard to the actual intent of the defendant if, after final judgment for the plaintiff, the defendant fails to satisfy the judgment.

"a judgment in such an action has been docketed against him"; and (3) the conveyor has "failed to satisfy the judgment." NYDCL § 273-a; *accord Grace v. Bank Leumi Trust Co.*, 443 F.3d 180, 188-89 (2d Cir. 2006); *Taylor-Outten v. Taylor*, 670 N.Y.S.2d 295, 296 (N.Y. App. Div. 4th Dep't 1998). Here, SEC has satisfied all three elements.

It is undisputed that on or about September 12, 2008, SEC filed and served a Demand for Arbitration against FKC seeking money damages arising out of the Coney Island Joint Venture. (DSOF ¶ 21; Levita Decl. ¶ 27.) It is well-established that an arbitration for money damages is an "action for money damages" within the meaning of NYDCL section 273-a. *See Dixie Yarns, Inc. v. Forman*, 906 F. Supp. 929, 936 (S.D.N.Y. 1995) (concluding that "the arbitration proceeding qualifies as 'an action for money damages.'"); *One Hundred Pearl Ltd. v. Vantage Sec., Inc.*, 887 F. Supp. 636, 640 (S.D.N.Y. 1995) (concluding that "as a respondent in an arbitration where the petitioner sought a monetary award, 500 Hanover was 'a defendant in an action for money damages' within the meaning of DCL § 273-a"); *Garden City Co., Inc. v. Kassover*, 673 N.Y.S.2d 653 (N.Y. App. Div. 1st Dep't 1998) (holding that conveyances made "after commencement of plaintiff's arbitration against the transferor" fell within the provisions of NYDCL section 273-a). Thus, as of

September 12, 2008, FKC was a "defendant in an action for money damages" for purposes of NYDCL section 273-a.

It is further undisputed that FKC made the following conveyances to Robert Solomon and Jane Solomon after September 12, 2008: (i) $1,000 to Robert Solomon on February 26, 2009 (DSOF ¶ 107; Kalish Decl. Ex. N, FKC 2009 General Ledger at 2); (ii) $2,000 to Jane Solomon on September 13, 2009 (DSOF ¶¶ 90, 106; Kalish Decl. Ex. N, FKC 2009 General Ledger at 4; Kalish Decl. ¶ 50); (iii) $300,000 to Jane Solomon on October 8, 2009 (DSOF ¶¶ 81-84, 106, 111; Kalish Decl. Ex. F, FKC Oct. 2009 Bank Stmt. at 4; Kalish Decl. Ex. G, FKC Teller Log Statement, dated 10/8/2009, at 3; Kalish Decl. Ex. N, FKC 2009 General Ledger at 4; Kalish Decl. Ex. H, Jane Solomon 6/13/2011 Dep. at 62-63; Kalish Decl. ¶¶ 34-36, 86-87); and (iv) $15,000 to Jane Solomon on October 21, 2009 (DSOF ¶¶ 92, 106, 112; Kalish Decl. Ex. N, FKC 2009 General Ledger at 4; Kalish Decl. ¶¶ 50, 88). As discussed above, FKC's conveyances to its officers and to its sole shareholder were unsupported by fair consideration. Accordingly, based on the unrefuted evidence, FKC conveyed $1,000 to Robert Solomon and $317,000 to Jane Solomon without fair consideration while FKC was a defendant in an action for money damages.

Finally, SEC has asserted, through the declaration of Jacob Levita, an affiant competent to testify, that the

Arbitration Judgment in the amount of $545,147.48 plus interest, issued on or about January 6, 2010, has not been fully satisfied and that SEC has received no funds toward the Arbitration Judgment. (Levita Decl. ¶ 30; Levita Reply Decl. ¶¶ 19-21; *see also* Def. Mem. at 10; DSOF ¶¶ 39, 53; SEC Counterclaims ¶ 131.)

In their memorandum of law opposing the instant motion for summary judgment, the FKC Plaintiffs dispute this claim, without evidentiary support, asserting that to the extent that FKC's conveyances to the Solomons in September and October 2009 constituted a "technical violation of the NYDCL," summary judgment should nevertheless be denied because (i) any violation was caused by SEC's own failure to accept satisfaction of the Arbitration Judgment out of other funds to which FKC alleges it is entitled pursuant to separate agreements between the parties (Pl. Opp. ¶¶ 7-9, 13, 17, 20, 23-25); (ii) SEC "owes Keystone more money than the amount of the Current Judgment" (*id.* ¶¶ 10-11, 13, 23-25, 29, 43); and (iii) SEC has already received $89,447.29 toward the Arbitration Judgment (*id.* ¶¶ 5, 13, 35-44). However, the FKC Plaintiffs have offered no admissible evidence in support of any of these assertions. Instead, the FKC Plaintiffs submitted an unsworn memorandum of law by their attorney, who does not claim to have personal knowledge of all of the facts set forth therein or otherwise to be competent to testify on the matters stated, along with documents containing

inadmissible hearsay. (*See generally* Pl. Opp.) This plainly does not satisfy the requirements of Federal Rule of Civil Procedure 56. *See* Fed. R. Civ. P. 56(c)(4) ("An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated."). The FKC Plaintiffs could have submitted an affidavit based on personal knowledge or taken the deposition of someone competent to testify concerning any funds purportedly received by SEC. The fact that the FKC Plaintiffs did not avail themselves of the opportunity to obtain admissible evidence with which to rebut SEC's claims, however, does not entitle them to a trial.

Accordingly, because SEC has established that FKC conveyed $1,000 to Robert Solomon and $317,000 to Jane Solomon without fair consideration while FKC was a defendant in an action for money damages, and FKC has failed to satisfy the judgment, SEC has established as a matter of law that these conveyances were constructively fraudulent.

### iii.    Constructive Fraud Under NYDCL §§ 273, 274, 275 (Third Counterclaim)

SEC also seeks summary judgment on its third counterclaim insofar as it alleges that FKC constructively fraudulently conveyed $1,094,600 to Robert and Jane Solomon

between 2005 and 2009. (Not. of Mot. ¶ c; Def. Mem. at 11-15;
SEC Counterclaims ¶¶ 114-20.) Although SEC cites to NYDCL
sections 273, 274, and 275, its submissions in support of the
instant motion for summary judgment appear to rely primarily on
section 273 as a basis to set aside the challenged conveyances.[3]
(*See* Def. Mem. at 13-15.)

A conveyance is deemed constructively fraudulent
pursuant to NYDCL section 273, if (1) the conveyance was made
without fair consideration, and (2) the conveyor was insolvent
or was rendered insolvent by the conveyance. *Sklaroff v.
Rosenberg*, 125 F. Supp. 2d 67, 74 (S.D.N.Y. 2000). Under New
York law, "[a] person is insolvent when the present fair salable
value of his assets is less than the amount that will be
required to pay his probable liability on his existing debts as
they become absolute and matured." NYDCL § 271(1). "Only
assets with a present salable value are taken into consideration
in determining insolvency. Claims that are inchoate, uncertain,
and contested have no present value and cannot be considered an
asset of the company." *Red Stripe*, 792 F. Supp. at 1343
(internal quotation marks and citations omitted).

---

[3] NYDCL section 273 provides:

> Every conveyance made and every obligation incurred
> by a person who is or will be thereby rendered
> insolvent is fraudulent as to creditors without
> regard to his actual intent if the conveyance is made
> or the obligation is incurred without a fair
> consideration.

Generally, the party challenging a conveyance has the burden of proving insolvency. *Capital Distrib. Servs., Ltd. v. Ducor Express Airlines, Inc.*, 440 F. Supp. 2d 195, 203 (E.D.N.Y. 2006) (citing *United States v. McCombs*, 30 F.3d 310, 324 (2d Cir. 1994)). Once it is established that a debtor transferred property without fair consideration, however, the law presumes that the transfer rendered the debtor insolvent. *United States v. Alfano*, 34 F. Supp. 2d 827, 845 (E.D.N.Y. 1999). The burden then shifts to the transferor to overcome that presumption by demonstrating the debtor's continued solvency after the transfer. *RTC Mortg. Trust 1995-S/N1 v. Sopher*, 171 F. Supp. 2d 192, 199 (S.D.N.Y. 2001); *see also Miner v. Edwards*, 634 N.Y.S.2d 306, 307-08 (N.Y. App. Div. 4th Dep't 1995) (affirming trial court's decision granting plaintiff's motion for summary judgment where the defendant "failed to overcome the presumption of insolvency that arises when a conveyance is made without consideration").

Because, as discussed above, any conveyances from FKC to the Solomons since December 28, 2005 are deemed to lack fair consideration as a matter of law, it is presumed that FKC was thereby rendered insolvent. *Alfano*, 34 F. Supp. 2d at 845. FKC has not offered any admissible evidence to rebut this presumption. In addition, the undisputed facts further support the conclusion that FKC is insolvent. FKC's General Ledger

demonstrates that at no time since February 14, 2005, on which date FKC transferred $500,000 to Jane Solomon, has FKC had sufficient funds in its bank account to pay the Arbitration Judgment. (Kalish Decl. Ex. J, FKC 2005 General Ledger at 1; DSOF ¶¶ 103-04; Kalish Decl. ¶ 73.) In addition, on October 13, 2009, after FKC transferred $15,000 to Jane Solomon, FKC's bank account had a closing balance of negative $9,416.24. (Kalish Decl. Ex. N, FKC 2009 General Ledger at 4; DSOF ¶ 97; Kalish Decl. ¶ 61.) Finally, FKC has represented to the court that it has no funds with which to pay its obligations. (Pl. Opp. ¶ 50; DSOF ¶ 54; Kalish Decl. ¶ 56.)

Even if the court were to accept FKC's unsupported assertion that SEC will ultimately be found liable to FKC for more money than FKC owes SEC (Pl. Opp. ¶¶ 10-11, 13, 24, 29, 43), this would not suffice to create an issue of fact as to FKC's insolvency. Such inchoate and contested claims "have no present value and cannot be considered an asset of the company" for the purpose of determining whether FKC is insolvent. *Red Stripe*, 792 F. Supp. at 1343. The FKC Plaintiffs are not entitled to a trial merely on the basis that they did not avail themselves of the opportunity to present evidence in their favor. Accordingly, the court finds, based on the record before it, that FKC fraudulently conveyed $1,049,600 to Jane Solomon and $45,000 to Robert Solomon within the meaning of NYDCL

section 273, and grants SEC's motion for summary judgment accordingly.

### 2. Actual Fraud Under NYDCL § 276 (First Counterclaim)

SEC seeks summary judgment on its first counterclaim that FKC intentionally fraudulently conveyed funds to Jane Solomon, in violation of NYDCL section 276. (Not. of Mot. ¶ a; SEC Counterclaims ¶¶ 90-108.) Although SEC's first counterclaim alleges that FKC has intentionally fraudulently conveyed "at least $2.799 million" to the Solomons and others since the fall of 2004, (SEC Counterclaims ¶¶ 99, 101, 105), SEC now appears to seek summary judgment only as to either $315,000 conveyed to Jane Solomon in October 2009 (Def. Mem. at 18-20) or $1,094,600 conveyed to Jane Solomon and Robert Solomon between 2005 and 2009 (*id.* at 21). For the following reasons, the court finds actual intent to defraud with respect to the $315,000 conveyed to Jane Solomon in October 2009, but not with respect to FKC's other conveyances.

Pursuant to NYDCL section 276, a conveyance is deemed actually fraudulent if it is made with "actual intent . . . to hinder, delay, or defraud either present or future creditors." A creditor seeking to set aside a conveyance bears the burden of proving actual intent by clear and convincing evidence. *Pfohl Bros. Landfill Site Steering Comm. v. Allied Waste Sys., Inc.*,

255 F. Supp. 2d 134, 174-75 (W.D.N.Y. 2002) (citations omitted).
Because direct proof of actual intent is rare, the creditor may
prove the debtor's actual fraudulent intent by reference to
circumstantial evidence, or so-called "badges of fraud." *Sharp
Int'l Corp.*, 403 F.3d at 56; *see also Capital Distrib. Servs.*,
440 F. Supp. 2d at 204 ("Actual intent need not be proven by
direct evidence, but may be inferred from the circumstances
surrounding the allegedly fraudulent transfer."). Examples of
"badges of fraud" include:

> (1) the lack or inadequacy of consideration;
>
> (2) the family, friendship or close
> associate relationship between the parties;
>
> (3) the retention of possession, benefit or
> use of the property in question [by the
> debtor];
>
> (4) the financial condition of the party
> sought to be charged both before and after
> the transaction in question;
>
> (5) the existence or cumulative effect of a
> pattern or series of transactions or course
> of conduct after the incurring of debt,
> onset of financial difficulties, or pendency
> or threat of suits by creditors; and
>
> (6) the general chronology of the events and
> transactions under inquiry.

*Salomon v. Kaiser*, 722 F.2d 1574, 1582-83 (2d Cir. 1983).

Here, the undisputed evidence reveals several of these
badges of fraud surrounding FKC's October 2009 transfers to Jane
Solomon of $300,000 and $15,000, respectively. First, as

discussed in detail above, these transfers from FKC to its principal officer and sole shareholder lacked fair consideration.  Second, it is undisputed that FKC and Jane Solomon had a close associate relationship.  Third, Jane Solomon testified during her deposition that she had used the $300,000 transferred to her on October 8, 2009 "to pay bills and debts." (Kalish Decl. Ex. H, Jane Solomon 6/13/2011 Dep. at 62.)

Finally, the general chronology of events surrounding these transfers constitutes further evidence of FKC's fraudulent intent to avoid paying a possibly imminent arbitration award to SEC.  It is undisputed that the October 8, 2009 transfer of $300,000 to Jane Solomon was made on the same day that FKC received $575,000 from SEA.  (*See* Kalish Decl. Ex. F, FKC Oct. 2009 Bank Stmt. at 3-4; Kalish Decl. Ex. N, FKC 2009 General Ledger at 4.)  The transfer of $300,000 to Jane Solomon also occurred after a multi-session arbitration, after submission of post-hearing briefs and reply briefs, and mere days before the arbitration panel issued its decision awarding SEC $545,147.48 plus interest.  (Kalish Decl. Ex. A, Arb. Award at 1; Def. Mem. at 19.)  It is further undisputed that the transfer of $15,000 to Jane Solomon occurred on October 21, 2009, more than a week after the arbitration panel issued the Arbitration Award, and the same day that SEC filed its petition to confirm the Award in Kings County Supreme Court.  (Kalish Decl. Ex. A, Arb. Award;

Kalish Decl. Ex. O, Notice of Petition, filed 10/21/2009.)  The
balance in FKC's bank account after the October 21, 2009
transfer was negative $9,416.24.  (Kalish Decl. Ex. N, FKC 2009
General Ledger at 4.)  The timing and circumstances of these
transactions constitute clear and convincing evidence that FKC
acted with intent to defraud its creditors.  *See, e.g.*, *Sullivan
v. Messer*, No. 98-CV-5981, 2000 U.S. Dist. LEXIS 3065, at *19
(E.D.N.Y. Jan. 31, 2000) (noting that the "suspicious timing of
the transaction" was "strongly indicative of [defendant's]
fraudulent intent"); *Capital Distrib. Servs.*, 440 F. Supp. 2d at
205 (granting summary judgment on claim of actual fraud where
conveyance was made on the same date the transferor was served
with a complaint seeking the transferred funds).

Although the FKC Plaintiffs argue that "the undisputed
and indisputable facts . . . show that Keystone's 'intent' was
just the opposite of hindering or delaying payment of the
[Arbitration] Judgment" (Pl. Opp. ¶ 17), to defeat summary
judgment they "must do more than simply show that there is some
metaphysical doubt as to the material facts, and may not rely on
conclusory allegations or unsubstantiated speculation." *FDIC*,
607 F.3d at 292 (citation omitted).  Here, the FKC Plaintiffs
have offered no competent evidence to raise a triable question
of fact.  *Cf. Pfohl Bros.*, 255 F. Supp. 2d at 175-78 (finding
that "[t]he plethora of evidence pertaining to the actual fraud

claim on both sides demonstrates that material issues of fact preclude granting summary judgment to any party on this issue"). Accordingly, the court grants summary judgment to SEC based on the record evidence that FKC conveyed $315,000 to Jane Solomon in October 2009 with actual intent to defraud SEC.

With respect to the additional challenged transactions that occurred prior to October 8, 2009, however, the court finds that SEC has not provided sufficient evidence regarding the timing and circumstances of those transactions to establish by clear and convincing evidence that FKC acted with actual intent to defraud its creditors. Accordingly, insofar as SEC asserts that the $779,600 FKC transferred to Jane Solomon and Robert Solomon prior to October 8, 2009 was also conveyed with actual intent to defraud (*see* Def. Mem. at 21), the motion for summary judgment is denied.

### B. Relief for Fraudulent Conveyances Under the NYDCL

"Generally, the creditor's remedy in a fraudulent conveyance action is 'limited to reaching the property which would have been available to satisfy the judgment had there been no conveyance." *Neshewat v. Salem*, 365 F. Supp. 2d 508, 521 (S.D.N.Y. 2005) (citations and internal quotation marks omitted); *see also Grace*, 443 F.3d at 189 ("The proper remedy in a fraudulent conveyance claim is to rescind, or set aside, the allegedly fraudulent transfer, and cause the transferee to

return the transferred property to the transferor."). NYDCL

section 278 provides, in relevant part:

> Where a conveyance or obligation is
> fraudulent as to a creditor, such creditor,
> when his claim has matured, may, as against
> any person except a purchaser for fair
> consideration without knowledge of the fraud
> at the time of the purchase, or one who has
> derived title immediately or mediately from
> such purchaser . . . have the conveyance set
> aside or obligation annulled to the extent
> necessary to satisfy his claim.

NYDCL § 278(1)(a). However, where the fraudulently transferred

assets no longer exist or are no longer in the transferee's

possession, the creditor may be entitled to a money judgment

against the transferee in an amount up to the value of the

fraudulently transferred assets. *Capital Distrib. Servs.*, 440

F. Supp. 2d at 204.

As discussed above, the undisputed facts demonstrate

that between 2005 and 2009, FKC fraudulently conveyed $1,049,600

to Jane Solomon and $45,000 to Robert Solomon, for a total of

$1,094,600.

Further, the FKC Plaintiffs do not dispute that the

transferred funds are no longer in the Solomons' possession. At

Jane Solomon's deposition on June 13, 2011, she testified that

she was no longer in possession of the $300,000 transferred to

her personal bank account on October 8, 2009. (Kalish Decl. Ex.

H, Jane Solomon 6/13/2011 Dep. at 62-63.) Further, the FKC

Plaintiffs have asserted that the Solomons are now "bereft of funds." (Pl. Opp. ¶ 50.) Thus, because the fraudulently transferred assets no longer appear to be in the Solomons' possession, SEC is entitled to judgment against FKC, the transferor, and against Jane Solomon and Robert Solomon, the transferees, up to the value of the Arbitration Judgment, but limited to the extent of the value of the assets transferred by FKC to each transferee. *Capital Distrib. Servs.*, 440 F. Supp. 2d at 204.

Accordingly, on SEC's First, Third, and Fourth Counterclaims pursuant to NYDCL §§ 276, 273, and 273-a, the court awards SEC a money judgment against FKC and Jane Solomon, jointly and severally, in the total amount of the Arbitration Judgment of $545,147.48 plus interest at the rate of nine percent per annum from November 13, 2009 until the date of entry of judgment in this case, with interest at the federal post-judgment rate thereafter. *See* 28 U.S.C. § 1961. Robert Solomon shall also be jointly and severally liable with FKC and Jane Solomon for up to $45,000, which is the amount fraudulently conveyed to him. Nevertheless, as discussed below, because the court finds it appropriate to pierce the corporate veil, Robert Solomon will be held jointly and severally liable with Jane Solomon FKC up to the full amount of the Arbitration Judgment.

SEC also seeks attorneys' fees pursuant to NYDCL section 276-a, which provides, in relevant part, that reasonable attorneys' fees should be awarded when a conveyance "is found to have been made by the debtor and received by the transferee with actual intent, as distinguished from intent presumed in law, to hinder, delay or defraud either present or future creditors," in violation of NYDCL section 276. NYDCL § 276-a. (*See* Not. of Mot. § b; SEC Counterclaims ¶¶ 109-13.) As set forth above, the undisputed facts establish by clear and convincing evidence that FKC acted with intent to defraud SEC in connection with the transfers of assets to Jane Solomon on October 8 and October 21, 2009. Thus, upon a properly supported application filed no later than 14 days from the date of entry of this Order, SEC will be entitled to recover its reasonable attorneys' fees for prosecuting its first counterclaim against FKC.

## C. Piercing the Corporate Veil (Fifth Counterclaim)

Finally, SEC seeks summary judgment on its fifth counterclaim to pierce FKC's corporate veil and hold Robert Solomon and Jane Solomon jointly and severally liable with FKC for the Arbitration Judgment. (Not. of Mot. ¶ e; SEC Counterclaims ¶¶ 135-43.) As an initial matter, the court notes that piercing the corporate veil does not constitute an independent cause of action under New York law. *Network Enters., Inc. v. Reality Racing, Inc.*, No. 09 Civ. 4664, 2010

U.S. Dist. LEXIS 89598, at *10-11 (S.D.N.Y. Aug. 24, 2010).

Instead, the alter ego doctrine is a theory of liability

generally invoked "to disregard the corporate entity to find the

owners liable for the debts of the corporation." *Liberty Mut.*

*Ins. Co. v. Horizon Bus. Co., Inc.*, No. 10-CV-449, 2011 U.S.

Dist. LEXIS 31569, at *18 (E.D.N.Y. Feb. 22, 2011), *adopted by*,

2011 U.S. Dist. LEXIS 31563 (E.D.N.Y. Mar. 24, 2011); *see also*

*Rothberg v. Chloe Foods Corp.*, No. 06-CV-5712, 2008 U.S. Dist.

LEXIS 6523, at *3-4 n.4 (E.D.N.Y. Jan. 29, 2008) (alter ego

theory invoked as a theory of liability to hold the individual

defendants liable for any judgment against the corporate

defendants); *9 E. 38th St. Assocs., L.P. v. George Feher*

*Assocs., Inc.*, 640 N.Y.S.2d 520, 521 (N.Y. App. Div. 1st Dep't

1996) ("[A] separate cause of action to pierce the corporate

veil does not exist independent from the claims asserted against

the corporation.").

　　　　The general rule is that principals and officers are

not liable to perform corporate obligations. *Bogosian v. All*

*Am. Concessions*, No. 06-CV-1633, 2011 U.S. Dist. LEXIS 109082,

at *17 (E.D.N.Y. Sept. 26, 2011). Thus, a party faces a "heavy

burden" when attempting to pierce the corporate veil in order to

hold a corporation's owners personally liable for the debts of

the corporation. *White v. Nat'l Home Prot., Inc.*, No. 09 Civ.

4070, 2010 U.S. Dist. LEXIS 40414, at *10 (S.D.N.Y. Apr. 21,

2010) (citation omitted).  Nevertheless, courts will pierce the corporate veil "whenever necessary to prevent fraud or achieve equity."  *JSC Foreign Econ. Ass'n Technostroyexport v. Int'l Dev. & Trade Servs*., 386 F. Supp. 2d 461, 464 (S.D.N.Y. 2005) (quoting *Walkovszky v. Carlton,* 18 N.Y.2d 414, 417 (1966)).

Under New York law, a party seeking to pierce the corporate veil must show that (1) the alleged alter ego exercised complete domination over the corporation with respect to the transaction at issue; and (2) such domination was used to commit a fraud or wrong that injured the party seeking to pierce the corporate veil.  *MAG Portfolio Consultant, GMBH v. Merlin Biomet Grp. LLC*, 268 F.3d 58, 63 (2d Cir. 2001) (citation omitted).  The court considers both of these elements below.

## 1.  Complete Domination

When determining whether a shareholder has exercised complete domination over a corporation, courts will consider, *inter alia*, the following factors:

> (1) the absence of the formalities and
> paraphernalia that are part and parcel of
> the corporate existence, i.e., issuance of
> stock, elections of directors, keeping of
> corporate records and the like; (2)
> inadequate capitalization; (3) whether funds
> are put in and taken out of the corporation
> for personal rather than corporate purposes;
> . . . [4] common office space, address and
> telephone numbers of corporate entities; [5]
> the amount of business discretion displayed
> by the allegedly dominated corporation; . .
> . [6] the payment or guarantee of debts of

the corporation by other corporations in the
group; and [7] whether the corporation in
question had property that was used by
another . . . as if it were its own.

*Bogosian*, 2011 U.S. Dist. LEXIS 109082, at *18-19 (citations

omitted).

Here, the undisputed record evidence clearly

establishes that the Solomons exercised sufficient control over

FKC to have "dominated" it with respect to the challenged

conveyances for purposes of the first prong.  The record shows

that FKC observed no corporate formalities and exercised no

business discretion independent from Robert Solomon's will.  For

example, Robert Solomon testified on June 30, 2009 that FKC was

"based on" him:

> Q:  Could you explain what First Keystone
> is?
> A:  Yes, it's a consulting company that was
> formed in the DAK days, so it's been around
> now 18, 19 years and it's a standard
> consulting company all around the country,
> perhaps all around the world.  It's really
> based on me and I could pick up the phone
> and call people because I've dealt with
> them; and I knew and I still know, I
> believe, almost everything there is to know
> about transit work – about electric work.
> So it's, as I meet people, I can draw on
> them as I've done, as we will testify soon.

(Kalish Decl. Ex. Q, Robert Solomon 6/30/2009 Arb. Tr. at 1053-

54.)  In addition, although Jane Solomon was the nominal

president of FKC, she testified that she "signed very little"

and authorized Robert Solomon to sign documents on her behalf

and on behalf of the corporation:

> Q:    Did anyone other than you ever sign
> your name to documents?
> A:    Mostly Bob signed by name.
> Q:    And he had your permission?
> A:    He had my permission to do that.   I
> signed very little.

(Kalish Decl. Ex. H, Jane Solomon 6/13/2011 Dep. at 150.)

> Q:    Mr. Solomon has the right to sign on
> behalf of First Keystone?
> A:    Yes, he does.
> Q:    Is there any type of limit to his
> authority to sign on behalf of First
> Keystone?
> A:    No.

(Kalish Decl. Ex. H, Jane Solomon 4/14/2010 Dep. at 21-22.)

The record also contains evidence that, without corporate formalities, FKC and the Solomons freely transferred money between the corporation and themselves.   Jane Solomon testified that she and her husband loaned money to FKC "when Bob and I determined [FKC] needed the money" and received repayment of those loans from FKC "when we [meaning FKC] had money." (Kalish Decl. Ex. H, Jane Solomon 6/13/2011 Dep. at 141-42.) She further acknowledged that there were no signed agreements between the Solomons and FKC regarding such loans of money. (*Id.* at 140-41.)   In addition, as discussed above, the undisputed evidence also reveals that the corporation not only is inadequately capitalized, but it is also insolvent.   *See Atateks Foreign Trade Ltd. v. Private Label Sourcing, LLC*, No.

07-CV-6665, 2009 U.S. Dist. LEXIS 54670, at *52-53 (S.D.N.Y.
June 23, 2009) (defendant corporation was insolvent and
therefore inadequately capitalized).

The Solomons' complete domination and control of FKC
is further demonstrated by the Solomons' use of corporate funds
for their personal use.  It is undisputed that FKC made direct
payments totaling more than $2,000 to a dermatologist and a
cardiologist, for which there can be no dispute that the
corporation has no need.  (DSOF ¶¶ 139-42; Kalish Decl. Exs. J-
N, FKC 2005-2009 General Ledgers; Kalish Decl. Ex. H, Jane
Solomon 6/13/2011 Dep. at 36; Kalish Decl. ¶¶ 116-17.)  FKC also
paid $113,000 to Robert Solomon's son, Neil Solomon, despite the
undisputed fact that Neil Solomon did not perform any work for
FKC.  (DSOF ¶¶ 144-49; Kalish Decl. Exs. J-N, FKC 2005-2009
General Ledgers; Kalish Decl. Ex. H, Jane Solomon 6/13/2011 Dep.
at 55; Kalish Decl. ¶¶ 119-24.)  In addition, FKC paid
$282,171.18 to Avalon Realty for renting an apartment at 201
50th Avenue in Long Island City, New York, which, according to
testimony by Robert Solomon, he and his wife rented in their
personal capacities.  (DSOF ¶¶ 135-38; Kalish Decl. Exs. J-N,
FKC 2005-2009 General Ledgers; Kalish Decl. Ex. T, Avalon
Riverview Description as of 7/21/2010; Kalish Decl. ¶¶ 112-15;
Kalish Decl. Ex. Q, Robert Solomon 4/14/2010 Dep. at 550.)
Although the FKC Plaintiffs now assert that the Solomons

"utilize[ed] the apartment [at 50th Avenue in Long Island City] largely as an office" where they held staff meetings, assembled and reviewed documents, filed and stored documents, met with attorneys, and performed work for various joint ventures (Pl. Opp. ¶¶ 51-53), it is well settled that a nonmoving party may not create an issue of fact "by submitting an affidavit in opposition to summary judgment that contradicts prior deposition testimony." *Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 104 (2d Cir. 2010). The FKC Plaintiffs' memorandum of law, which in any event would not be admissible at trial, therefore, does not suffice to rebut Robert Solomon's prior deposition testimony that the apartment in Long Island City was rented exclusively by the Solomons and not by FKC. Furthermore, even if the FKC Plaintiffs' explanation regarding the apartment's use were presented in an admissible form, this explanation merely provides further support that the Solomons did not respect the corporate form, in that it shows that the Solomons used their apartment as a common office space for FKC. Similarly, according to FKC's letterhead, FKC used the Solomons' personal Florida residence as its business address, further suggesting that the Solomons exerted complete domination over FKC. (*See* Kalish Decl. Ex. Z, Letter dated 12/31/2007 on FKC Letterhead, at 1; Kalish Decl. Ex. H, Jane Solomon 6/13/2011 Dep. at 5-6.) *See, e.g.*, *Bogosian*, 2011 U.S. Dist. LEXIS 109082, at *22

(piercing the corporate veil where, *inter alia*, the corporation's president, director, and majority shareholder ran the corporation out of his home and the corporation paid his personal travel and lodging expenses).

In sum, the deposition testimony and documentary evidence submitted by SEC provides ample factual substantiation that Jane Solomon, as FKC's president and sole shareholder, and Robert Solomon, as FKC's vice president, exercised complete domination over FKC.

### 2. Use of Domination to Commit a Wrong

In addition to demonstrating the Solomons' complete domination over FKC, SEC must also demonstrate that the Solomons, "through [their] domination, abused the privilege of doing business in the corporate form to perpetrate a wrong or injustice against [SEC] such that a court in equity will intervene." *Bogosian*, 2011 U.S. Dist. LEXIS 109082, at *29-30 (citation and internal quotation marks omitted). "To satisfy this requirement, the party seeking to pierce [the corporate veil] may demonstrate either the elements of fraud, or a 'non-fraudulent wrong attributable to the defendant's complete domination of the corporation in question.'" *Id.* (quoting *United Feature Syndicate, Inc. v. Miller Features Syndicate, Inc.*, 216 F. Supp. 2d 198, 223 (S.D.N.Y. 2002)). "Under New York law, the diversion of funds to make a corporation judgment-

proof constitutes a wrong for the purposes of determining whether the corporate veil should be pierced." *Fed. Nat'l Mortg. Ass'n v. Olympia Mortg. Corp.*, 724 F. Supp. 2d 308, 320 (E.D.N.Y. 2010) (quoting *Capital Distrib. Servs. v. Ducor Express Airlines, Inc.*, No. 04-CV-5303, 2007 U.S. Dist. LEXIS 31943, at *11 (E.D.N.Y. May 1, 2007)).

The FKC Plaintiffs argue in a conclusory fashion that "neither the Solomons nor Keystone intended or engaged in any fraudulent activity, and therefore, no improper purpose may be inferred." (Pl. Opp. ¶ 54.) As discussed above, however, the record demonstrates that the Solomons' domination of FKC led to the diversion of at least $1,094,600 from FKC's bank accounts to the Solomons' personal bank accounts between 2005 and 2009, thereby rendering FKC insolvent and unable to pay the Arbitration Award and Judgment awarded to SEC. "The question is not whether but for the alter ego's domination, the dominated company would be in sound financial health. Rather, the injury caused by [the Solomons'] domination . . . is that the diverted funds are unavailable to satisfy [FKC's] liability to [SEC] unless and until the veil is pierced." *Atateks Foreign Trade Ltd.*, 2009 U.S. Dist. LEXIS 54670, at *61-62. For the foregoing reasons, the court concludes that the Solomons' domination resulted in injury to SEC, and therefore summary judgment is granted on SEC's application to pierce FKC's corporate veil and

hold the Solomons personally liable for FKC's obligations to
SEC.

The court therefore finds that piercing the corporate
veil in this instance is necessary to prevent fraud and to
achieve equity.  Accordingly, Jane Solomon and Robert Solomon
shall be jointly and severally liable, along with FKC, to SEC
for the Arbitration Judgment entered by the Kings County Supreme
Court on January 6, 2010 in the amount of $545,147.48 plus
interest at a rate of nine percent per annum from November 13,
2009 until the date of entry of judgment in this case, and post-
judgment interest thereafter at the federal rate.  *See* 28 U.S.C.
§ 1961.

## CONCLUSION

For the reasons set forth above, SEC's motion for
summary judgment on its first through fifth counterclaims is
granted.  Specifically, the court finds that (i) FKC's
conveyances of $1,049,600 to Jane Solomon and $45,000 to Robert
Solomon between 2005 and 2009, were constructively fraudulent;
(ii) FKC's conveyances of $315,000 to Jane Solomon in October
2009 were performed with actual intent to defraud SEC; and (iii)
the Solomons exercised complete domination over FKC, resulting
in injury to SEC.  Accordingly, FKC, Jane Solomon, and Robert
Solomon are jointly and severally liable to SEC for the
Arbitration Judgment in the amount of $545,147.58 plus interest

at a rate of nine percent per annum from November 13, 2009 until the date of entry of judgment in this case, with interest at the federal post-judgment rate thereafter.  In addition, SEC will be entitled to recover from the FKC Plaintiffs its reasonable attorneys' fees for prosecuting its first counterclaim, upon an application properly supported by contemporaneous time records and filed no later than May 29, 2012.

The Clerk of the Court is respectfully requested to enter judgment accordingly and to close this case.

**SO ORDERED.**

Dated:    Brooklyn, New York
          May 15, 2012

                              _____/s/_____
                              **KIYO A. MATSUMOTO**
                              United States District Judge
                              Eastern District of New York