UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------X
FIRST KEYSTONE CONSULTANTS, INC.
ROBERT H. SOLOMON and
JANE SOLOMON,

    Plaintiffs/Counterclaim-Defendants,    NOT FOR PUBLICATION

                                **MEMORANDUM & ORDER**
      -against-                        10-CV-696(KAM)(SMG)

SCHLESINGER ELECTRICAL
CONTRACTORS, INC.,

    Defendant/Counterclaim-Plaintiff.
--------------------------------------X

**KIYO A. MATSUMOTO, United States District Judge:**

        Presently before the court is defendant/counterclaim-plaintiff Schlesinger Electrical Contractors, Inc.'s ("defendant") motion for attorney's fees and costs in connection with the court's award of summary judgment to defendant on defendant's first counterclaim against plaintiffs/counterclaim-defendants First Keystone Consultants, Inc. ("FKC"), Robert H. Solomon and Jane Solomon (together, the "Solomons," and collectively with FKC, "plaintiffs"). (ECF No. 150, Defendant's Motion for Attorney's Fees, dated 5/22/12 ("Def. Mot.").) For the reasons that follow, defendant's motion is granted and defendant is awarded $28,416.53 in attorney's fees and costs.

**BACKGROUND**[1]

On December 15, 2011, defendant filed a motion for summary judgment on its first through fifth counterclaims against plaintiffs.  (ECF No. 137-1, Notice of Motion for Partial Summary Judgment, dated 12/15/11.)  Plaintiffs opposed defendant's summary judgment motion on January 16, 2012 (ECF No. 139, Plaintiffs' Opposition to Defendant's Motion, dated 1/16/12) and defendant submitted a reply in further support of its motion on February 10, 2012 (ECF No. 138-15, Defendants' Reply In Support of Motion, dated 2/10/12).  After reviewing the parties' respective motions and accompanying declarations and exhibits in support, the court issued an order on May 15, 2012 granting defendant's motion for summary judgment in its entirety, and further granting defendant permission to move for attorney's fees and costs in connection with its first counterclaim on or before May 29, 2012.  (ECF No. 148, Memorandum and Order Granting Motion For Summary Judgment, dated 5/15/12 ("Summary Judgment Order").)  The court's judgment was entered on May 17, 2012.  (ECF No. 49, Clerk's Judgment, dated 5/17/12.)

---

[1] The facts of this case are set forth exhaustively in the court's order dated March 28, 2012 granting defendant's motion to dismiss (ECF No. 144) and its order dated May 15, 2012 granting defendant's motion for summary judgment on its first through fifth counterclaims (ECF No. 148).  Therefore, only the facts relevant to deciding the instant motion are discussed herein.

Subsequently, on May 22, 2012, defendant filed its motion for attorney's fees and costs. (*See* Def. Mot.) In support of its motion, defendant filed the declaration of Melvin J. Kalish, Esq., dated May 22, 2012 (ECF No. 150-1 ("Kalish 5/22/12 Decl.")), who served as defense counsel in this case, and the declaration of Jacob Levita, defendant's president, also dated May 22, 2012 (ECF No. 150-2 ("Levita 5/22/12 Decl.")). As discussed in greater detail below, defendant's submissions in support of its motion request a total of $37,755.65[2] in legal fees and disbursements for litigating its first counterclaim. (Kalish 5/22/12 Decl. ¶¶ 4-9.[3]) Mr. Kalish arrived at this total figure by (i) discounting the disbursements down to 25% of the total disbursement amount; and (ii) discounting the time entries for work performed by varying percentages, which, according to Mr. Kalish, represents a fair allocation of time spent litigating the first counterclaim as distinct from the second through fifth counterclaims. (*Id.* ¶¶ 4-7.) Mr. Kalish's total fee amount was generated using a single rate for his firm throughout the pendency of this litigation, as reflected by the contemporaneous time records attached to Mr. Kalish's May 22, 2012 declaration. (*Id.* ¶ 5, Ex. A.) The time records submitted

---

[2] Mr. Kalish's declaration incorrectly totals his requested amount for legal fees and disbursements as $37,737,67. (*See* Kalish 5/22/12 Decl. ¶ 9.)
[3] The paragraphs of Mr. Kalish's declaration dated May 22, 2012 are misnumbered as printed; the court has revised the paragraph numbers in deciding this motion and, thus, references to Mr. Kalish's declaration dated May 22, 2012 are to the revised paragraph numbers.

by Mr. Kalish, however, do not distinguish between timekeepers. (*See id.* at Ex. A.)

On June 4, 2012, in accordance with the court's scheduling order dated May 22, 2012, plaintiffs filed an opposition to defendant's motion for fees and costs. (ECF No. 151, Plaintiffs' Opposition to Motion for Attorney's Fees, dated 6/4/12 ("Plffs. Opp.").) Plaintiffs challenge defendant's assertion that the time records attached to Mr. Kalish's May 22, 2012 declaration are "contemporaneous," based upon plaintiffs' observation that the records do not specify a timekeeper and do not display the hourly rate for each attorney working on a particular date. (Plffs. Opp. at 1.) Plaintiffs also contend that Mr. Kalish's time records inaccurately imply that Mr. Kalish was the only attorney working on this case when an associate in Mr. Kalish's office, Joshua D. Spitalnik, Esq., conducted at least two of the depositions pertinent to this motion by himself. (*Id.* at 2.) Additionally, plaintiffs argue that Mr. Kalish's requested amount for fees and costs should be discounted by 20%, and not 25%, because defendants raised five counterclaims in total, and thus the fees and costs associated with only one of the five should represent 20% of the total amount. (*Id.*)

Plaintiffs further argue that defendant should not be awarded *any* attorney's fees at all due to its purported "fraud"

4

upon the court during the course of the summary judgment
briefing.  (Plffs. Opp. at 2-3.)  Specifically, plaintiffs
contend, as they did in their opposition to defendant's summary
judgment motion (*see* ECF No. 139, Plffs. Opp. to Summary
Judgment Mot. dated 1/6/12, ¶¶ 1, 35-37, and n.1), that the
amount for which plaintiffs can be found liable to defendant
should be reduced by $87,500, the amount of a payment
purportedly made by a non-party, Siemens Industry, Inc.
("Siemens"), to defendant on plaintiffs' behalf against a pre-
existing arbitration judgment (Plffs. Opp. at 2-3).  According
to plaintiffs, defendant and its attorney, Mr. Kalish, knew
about the alleged $87,500 payment but denied its existence in
defendant's submissions to the court.  (*Id.*)  Plaintiffs
obtained the documents that allegedly support this theory (the
"protected documents") through discovery in a different action
pending in this courthouse, *Solomon et al. v. Siemens Industry,
Inc., et al.*, 11-cv-1321 (DLI) (SMG) (E.D.N.Y.) (the "Siemens
case"[4]), but at the time plaintiffs were briefing their
opposition to defendant's fee application (*i.e.*, June 2012), the
protected documents were subject a confidentiality order issued
by Chief Magistrate Judge Gold in the Siemens case, preventing

---

[4]The plaintiffs in the Siemens case are identical to the plaintiffs in this
case.  The convoluted relationships between Siemens and the parties to this
case are discussed in the court's order dated March 28, 2012 granting
defendant's motion to dismiss.  (*See generally* ECF No. 144.)

plaintiffs from attaching the actual protected documents to their opposition to defendant's fee application.[5]  (*Id.* at 2-3.)

Defendant's reply in support of its motion asserts that the time records attached to Mr. Kalish's May 22, 2012 declaration are indeed contemporaneous, as evidenced by the fact that they contain extensive redactions of descriptions of time spent on other aspects of this case, because if they were really an "after-the-fact summary" of time spent, redactions would be unnecessary.  (ECF No. 152, Reply Declaration of Melvin J. Kalish, Esq. dated 6/6/12 ("Kalish 6/6/12 Decl."), ¶ 6.) Additionally, Mr. Kalish acknowledged that a sixth-year associate at his firm, Mr. Spitalnik, has performed work on this case, but contends that the requested fee amount is still appropriate because Mr. Kalish's firm has used a single, blended rate for all work performed by any attorney (principal or associate) for the past 32 years, which is reflected in the firm's retainer agreements with its clients.  (*Id.* ¶¶ 7-9.) According to Mr. Kalish, this single blended rate is appropriate because, as a "small firm," he and his colleagues always work on cases as a team and Mr. Kalish is involved in "virtually every aspect of virtually every case in the office."  (*Id.* ¶ 8.) Moreover, this single, blended rate was the rate actually paid

---

[5]Plaintiffs relied on this same claim while briefing their opposition to defendant's summary judgment motion six months earlier, in January 2012, as the reason why the underlying documents were not attached.  (*See* ECF No. 139, Plffs. Opp. to Summary Judgment Mot. dated 1/16/12, ¶ 1, n.1.)

by the defendant to Mr. Kalish's firm for work on this case.
(*Id.*)

On June 26, 2012, with the permission of the court and
on notice that defendant might seek sanctions thereafter (*see*
Order dated June 26, 2012), plaintiffs filed under seal a
supplemental opposition to defendant's fee application,
reiterating their argument that the alleged $87,500 payment from
Siemens to defendant should be credited against the amount of
judgment, and also attaching the purported corroborating
documents that were previously subject to Chief Magistrate Judge
Gold's confidentiality order in the Siemens case.  (*See* ECF No.
156, Plaintiffs' Supplemental Opposition filed 6/26/12 ("Plffs.
Suppl. Opp.").)  Chief Magistrate Judge Gold had modified the
confidentiality order in the Siemens case on June 12, 2012 to
permit plaintiffs to submit the protected documents to this
court, with the requirement that plaintiffs file the protected
documents under seal and attach the transcript of the June 12,
2012 conference during which Chief Magistrate Judge Gold
permitted the documents' use.  (Plffs. Suppl. Opp. at 7, n.3;
*see also* ECF No. 156-1, Transcript of June 12, 2012 Conference
in *Solomon et al. v. Siemens Industry, Inc., et al.*, 11-cv-1321
(DLI) (SMG) ("Tr."), at 11.)

Notably, in persuading Chief Magistrate Judge Gold
during the June 12, 2012 conference to modify the

confidentiality order that applied to the protected documents produced in the Siemens case, plaintiffs apparently allowed Chief Magistrate Judge Gold to believe that they intended to use these documents to support a Rule 60 motion for post-judgment relief regarding the summary judgment decision in this case. (*See* Tr. at 4, 6, 8.)  When the June 12, 2012 conference occurred in the Siemens case, this court had already issued its decision granting summary judgment to defendant on its first through fifth counterclaims, and judgment had been entered. (*See generally* Summary Judgment Order dated 5/15/12; ECF No. 49, Clerk's Judgment dated 5/17/12.)  Thus, as Chief Magistrate Judge Gold observed at the June 12, 2012 conference, "[g]iven that [the instant 10-cv-696 case was] over," there was no more "incentive for plaintiffs to be seeking discovery in [the Siemens case] for use in another litigation." (Tr. at 4.)

Plaintiffs' June 26, 2012 sealed supplemental submission attaching the protected documents, however, does not seek Rule 60 relief nor does it even cite any case law regarding Rule 60.  Instead, plaintiffs' June 26, 2012 filing is styled as a further opposition to defendant's fee application and requests that this court impose sanctions on defendant and defendant's counsel for their supposedly fraudulent representations regarding the purported $87,500 payment. (*See generally* Plffs. Suppl. Opp.)  Plaintiffs' June 26, 2012 filing, like their

8

previous submissions regarding the purported $87,500 payment, also lacks an affidavit or sworn declaration by any individual with personal knowledge of the alleged events surrounding the purported $87,500 payment.  (*See generally id.*)

Defendant responded under seal to plaintiffs' June 26, 2012 supplemental filing on July 5, 2012.  (ECF No. 158, Declaration of Melvin J. Kalish dated 7/5/12 ("Kalish 7/5/12 Decl.").)  As defendant noted, it has already countered plaintiffs' assertions regarding the purported $87,500 payment in three separate court filings: ECF No. 138-1, Reply Declaration of Melvin J. Kalish in Support of Defendant's Summary Judgment Motion dated 2/10/12; ECF No. 138-2, Reply Declaration of Jacob Levita in Support of Defendant's Summary Judgment Motion dated 2/9/12; and ECF No. 138-15, Reply Memorandum of Law in Support of Defendant's Summary Judgment Motion dated 2/10/12).  (Kalish 7/5/12 Decl. ¶ 4.)  Nonetheless, defendant reiterated why the purported $87,500 payment was not made by Siemens to defendant on plaintiffs' behalf and therefore should not be credited against the court's award to defendant. (*Id.* ¶¶ 6-12.)  These arguments were also supported by an additional sworn declaration of defendant's president, Jacob Levita, submitted under seal in response to plaintiffs' June 26, 2012 filing.  (ECF No. 158-2, Declaration of Jacob Levita dated 7/5/12 ("Levita 7/5/12 Decl."), ¶¶ 4-7).

For the reasons discussed below, the court finds no merit in plaintiffs' untimely and unpersuasive request that the court reconsider the amount of judgment awarded to defendant in connection with the court's grant of summary judgment to defendant on its counterclaims.  Additionally, although defense counsel's use of a single fee rate for all its attorneys regardless of years of experience and area of expertise is somewhat unusual in this Circuit, defendant's motion for attorney's fees and costs is granted in the amount of $28,416.53, based on defendant's instant application as well as the reasonable amount of fees incurred in responding to plaintiffs' June 26, 2012 supplemental submission.

**DISCUSSION**

**I.    Plaintiffs' Untimely Request for Reconsideration of the Amount of Judgment is Denied**

As an initial matter, plaintiffs' implicit request for reconsideration of the amount of judgment awarded by this court in connection with the court's grant of summary judgment to defendant is both inappropriate and untimely.

As noted above, plaintiffs argue in opposition to defendant's instant application that defendant and defendant's counsel perpetrated a fraud upon the court by denying the existence of a $87,500 payment purportedly made by Siemens to defendant on plaintiffs' behalf, which plaintiffs claim should

10

be credited against the amount of judgment awarded to defendant
in this case.  (*See* Plffs. Opp. at 2-3; Plffs. Suppl. Opp. 1-8.)
Notwithstanding the repetitive and meritless nature of
plaintiffs' argument,[6] it is also a thinly-disguised request that
the court reconsider its May 15, 2012 decision to grant summary
judgment, which awarded defendant $545,147.58, plus interest,
exclusive of plaintiffs' requested $87,500 discount.  (*See*
Summary Judgment Order at 7-8, 11-12, 27-29 (rejecting
plaintiffs' unsupported assertions that a $87,500 payment was
made in connection with the arbitration award), and 49-50
(awarding defendant $545,147.58, plus interest).)

Plaintiffs' request that the court reconsider the
amount of judgment awarded to defendant is thus untimely, given
that Local Rule 6.3 requires a party to file a motion for
reconsideration within 14 days of the entry of judgment to be
reconsidered, and Rule 4 of the Federal Rules of Appellate
Procedure requires a party to file a notice of appeal within 30
days of the date of entry of judgment to be appealed.  Fed. R.
App. Proc. 4.  The clerk entered judgment on the court's summary
judgment order on May 17, 2012 (*see* ECF No. 149), and
plaintiffs' initial opposition to defendant's fee application

---

[6] For example, plaintiffs have repeated their theory regarding the purported
$87,500 payment, almost verbatim, in four separate filings in this case.
(*See* ECF No. 131, Plaintiffs' Letter dated 12/16/12, at 1-5; ECF No. 139,
Plffs. Opp. to Summary Judgment Mot. dated 1/6/12, ¶¶ 1, n.1, 35-37; ECF No.
153, Plffs. Opp. at 1-2; ECF No. 156, Plffs. Suppl. Opp. at 1-8.)

11

was not filed until June 4, 2012 (*see* ECF No. 151), or 18 days after the entry of judgment.  In any event, plaintiffs have not cited to any applicable legal standards for a motion for reconsideration in either their June 4, 2012 or June 26, 2012 submissions, nor have they appealed the court's May 22, 2012 summary judgment order.

Plaintiffs did make a Rule 60 motion only in regard to the court's March 28, 2012 decision granting defendant's motion to dismiss (ECF No. 148), not the court's summary judgment decision on defendant's first through fifth counterclaims dated May 15, 2012.  (*See generally* ECF No. 159, Plaintiffs' Letter Motion for Reconsideration of the Court's Order Dismissing Plaintiffs' Causes of Action, dated 10/4/12.)  Given that plaintiffs had the protected documents when they moved under Rule 60 in October 2012[7] but did not rely on them, the court is left to wonder what truth, if any, there was to counsel for plaintiffs' apparent representations prior to the June 12, 2012 conference in the Siemens case.

Nonetheless, the court has reviewed the documents plaintiffs contend support their argument that the amount of judgment against them in this case should be reduced by $87,500 (ECF No. 156, Ex. A) and defendant's submissions in response

---

[7] As demonstrated by their letter to the court dated December 16, 2011, plaintiffs had already received the protected documents in the Siemens case by December 16, 2011.  (*See generally* ECF No. 131, Plaintiffs' Letter dated 12/16/11.)

(ECF Nos. 158-1, 158-2), and finds no reason to disturb the amount of the judgment previously awarded to defendant in connection with the grant of summary judgment on defendant's first through fifth counterclaims.  Defendant will, however, be awarded the sum of $1,200.00 in addition to the fee amounts set forth below, representing the court's view of a reasonable amount of fees incurred by defendant in responding to plaintiffs' June 26, 2012 sealed supplemental submission.

## II.  Defendant's Application for Fees and Costs

As discussed above, defendant's instant application for fees and costs in connection with its first counterclaim against plaintiffs seeks $36,247.50 in legal fees and $1,508.15 in disbursements, for a total of $37,755.65 in connection with its first counterclaim.  (Kalish 5/22/12 Decl. ¶¶ 4-9.) Specifically, defense counsel spent 32 hours in 2010 (billed at a blended rate of $320 per hour), 60.75[8] hours in 2011 (billed at a blended rate of $330 per hour), and 18.50 hours in 2012 (billed at a blended rate of $340 per hour) litigating defendant's first counterclaim.  (*Id.* at 9.)  Mr. Kalish arrived at the requested total number of hours by discounting the work performed by his firm by varying percentages, which, according

---

[8] Mr. Kalish originally totaled the number of hours billed for 2011 as 59.75 (*see* Kalish 5/22/12 Decl. ¶ 9), but based on the court's independent review of the time records submitted along with the instant fee application, the total number of hours Mr. Kalish is actually seeking for 2011 is 60.75 (*see* Kalish 5/22/12 Decl., Ex. A).

to Mr. Kalish, represents a fair allocation of time spent litigating the first counterclaim as distinct from the second through fifth counterclaims. (*Id.* ¶¶ 4-7.) He also discounted the disbursements down to 25% of the total. (*Id.*) Mr. Kalish's total requested fee amount was generated using a single rate for the firm throughout this litigation, as reflected by the contemporaneous time records attached to his May 22, 2012 declaration. (*Id.* ¶ 5, Ex. A.)

Plaintiffs contend that the total amount requested for fees and costs is overstated in defendant's application, because defendant should only be seeking 20% of its total fees and costs (not 25%). (Plffs. Opp. at 1-2.) Plaintiffs also note that Mr. Kalish has not designated nor provided an hourly rate for the time spent by his sixth-year associate, Mr. Spitalnik, working on defendant's first counterclaim, and object to an award of fees on this basis as well. (*Id.*)

### A.   Legal Standards

A determination of the appropriate award for attorney's fees rests soundly within the discretion of the district court. *See Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983). "The party seeking reimbursement bears the burden of proving the reasonableness and necessity of hours spent and rates charged." *Morin v. Nu-Way Plastering Inc.*, No. 03-CV-405, 2005 WL 3470371, at *2 (E.D.N.Y. Dec. 19, 2005) (citing *New York*

14

*State Ass'n for Retarded Children, Inc. v. Carey*, 711 F.2d 1136
(2d Cir. 1983)).

### 1.   Reasonable Hourly Rate

In *Arbor Hill Concerned Citizens Neighborhood
Association v. County of Albany*, the Second Circuit explained
that, when determining the reasonableness of attorney's fees,
the preferred course is:

> for the district court, in exercising its
> considerable discretion, to bear in mind *all*
> of the case-specific variables that [the
> Second Circuit] and other courts have
> identified as relevant to the reasonableness
> of attorney's fees in setting a reasonable
> hourly rate.  The reasonable hourly rate is
> the rate a paying client would be willing to
> pay. In determining what rate a paying
> client would be willing to pay, the district
> court should consider, among others, the
> *Johnson* factors;[9] it should also bear in mind
> that a reasonable paying client wishes to
> spend the minimum necessary to litigate the
> case effectively.  The district court should
> also consider that such an individual might
> be able to negotiate with his or her
> attorneys, using their desire to obtain the

___

[9] The twelve factors set forth by the Fifth Circuit in *Johnson v. Georgia
Highway Express, Inc*. are:
> (1) the time and labor required; (2) the novelty and
> difficulty of the questions; (3) the skill required
> to perform the legal service properly; (4) the
> preclusion of other employment by the attorney due to
> acceptance of the case; (5) the customary fee; (6)
> whether the fee is fixed or contingent; (7) time
> limitations imposed by the client or the
> circumstances; (8) the amount involved and the
> results obtained; (9) the experience, reputation, and
> ability of the attorneys; (10) the "undesirability"
> of the case; (11) the nature and length of the
> professional relationship with the client; and (12)
> awards in similar cases.

488 F.2d 714, 717-19 (5th Cir. 1971).

> reputational benefits that might accrue from
> being associated with the case. The district
> court should then use that hourly rate to
> calculate what can properly be termed the
> "presumptively reasonable fee."

484 F.3d 162 (2d Cir. 2007), *as amended,* 522 F.3d 182, 190 (2d

Cir. July 12, 2007).  "After determining the amount of the

presumptively reasonable fee, the court may use its discretion

to increase or reduce the amount based on the particular

circumstances of the case." *Chan v. Sung Yue Tung Corp.*, No.

03-cv-6048, 2007 WL 1373118, at *1 (S.D.N.Y. May 8, 2007).  In

addition, "[t]he Supreme Court directed that district courts

should use the prevailing market rates in the community in

calculating the lodestar, or what the Second Circuit is now

calling the 'presumptively reasonable fee.'" *Lynch v. Town of

Southampton*, 492 F. Supp. 2d 197, 210-11 (E.D.N.Y. June 27,

2007) (citing *Blum v. Stenson*, 465 U.S. 886, 895 (1984)).  The

community is defined as the district in which the court sits.

*See Arbor Hill*, 522 F.3d at 190; *Lynch*, 492 F. Supp. 2d at 211.

In the Eastern District of New York, depending on the

nature of the action, extent of legal services provided, and

experience of the attorney, hourly rates range from

approximately $300 to $400 per hour for partners, $200 to $300

per hour for senior associates, and $100 to $200 per hour for

junior associates.  *See Konits v. Karahalis*, 409 F. App'x 418,

422-23 (2d Cir. 2011) (affirming district court decision holding

that prevailing rates for experienced attorneys in the Eastern
District of New York range from approximately $300 to $400 per
hour); *Pilitz v. Inc. Vill. of Freeport*, No. 07-cv-4078, 2011 WL
5825138, at *4 (E.D.N.Y. Nov. 17, 2011) (noting hourly rates of
$300-$450 for partners, $200-$300 for senior associates, and
$100-$200 for junior associates); *Szczepanek v. Dabek*, No. 10-
cv-2459, 2011 WL 846193, at *8 (E.D.N.Y. Mar. 7, 2011) (noting
that recent prevailing hourly rates in the Eastern District are
$200-$400 for partners and $100-$295 for associates); *Crapanzano
v. Nations Recovery Ctr., Inc.*, No. 11-cv-1008, 2011 WL 2847448,
at *2 (E.D.N.Y. June 29, 2011) (noting hourly rates of $200-$350
for partners, $200-$250 for senior associates with four or more
years of experience, and $100-$150 for junior associates with
one to three years of experience), *adopted by* 2011 WL 2837415
(E.D.N.Y. July 14, 2011); *Gutman v. Klein*, No. 03-cv-1570, 2009
WL 3296072, at *2 (E.D.N.Y. Oct. 13, 2009) (approving hourly
rates of $300-$400 for partners, $200-$300 for senior
associates, and $100-$200 for junior associates).

 Additionally, although defendant's request for
attorney's fees at a single, blended rate has not been
explicitly endorsed by the Second Circuit, *see McDonald ex rel
Prendergast v. Pension Plan of the NYSA-ILA Pension Trust Fund*,
450 F.3d 91, 98 (2d Cir. 2006), several courts in this Circuit
have approved similar fee applications involving blended rates

17

after tailoring them to the prevailing rates of their respective districts. *See, e.g., Jackson Hewitt Inc. v. Excellent Prof'l Servs. LLC*, No. 08-cv-5237, 2010 WL 5665033, at *4 (E.D.N.Y. Nov. 8, 2010) (applying blended rate of $350 for partners and $225 for associates where application did not provide names of all attorneys who worked on the case, in light of prevailing rates in the Eastern District), *adopted by* 2011 WL 317969 (E.D.N.Y. Jan. 31, 2011); *Suchodolski Assocs., Inc. v. Cardell Fin. Corp.*, No. 03-cv-4148, 2008 WL 5539688, at *3 (S.D.N.Y. Dec. 18, 2008) (applying blended rate of $300 to fee request for partners and associates where movant "failed to provide information regarding the experience levels of the attorneys who worked on the case"); *Carter v. Copy Train, Inc.*, No. 02-cv-7254, 2004 WL 690746, at *1 (S.D.N.Y. Mar. 30, 2004) (awarding blended rate for fee application where "attorneys of apparently varying seniority" worked on matter); *Figueroa ex rel. Havre v. Savanar Rest., Inc.*, 182 F. Supp. 2d 339, 341 (S.D.N.Y. 2002) (applying single, blended rate "because it is unclear from Plaintiff's bill submission whether the attorney's fees previously awarded are attributable to associate or partner time"); *Leva v. First Unum Life Ins. Co.*, No. 96-cv-8590, 1999 WL 294802, at *2 (S.D.N.Y. May 11, 1999) (applying blended rate where it was not clear which of multiple billing attorneys performed each task); *Trustees of Buffalo Laborers' Pension Fund*

18

*v. Accent Stripe, Inc.*, No. 01-cv-76C, 2007 WL 2743441, at *3
(W.D.N.Y. Sept. 18, 2007) (noting lack of explicit approval for
blended rates in the Second Circuit but applying blended rate
that comported with local district rates for partners and
associates, where it was "not clear from the submissions whether
the attorneys who worked on this case were partners or
associates, and plaintiffs' counsel have not specified the
attorney's respective billing rates"); *Scholastic, Inc. v.
Stouffer*, 246 F. Supp. 2d 355, 357-58 (S.D.N.Y. 2003) (applying
a blended rate in determining the reasonable hourly rate for
single attorneys where their individual rates changed during the
course of the litigation); *see also Joe Hand Promotions, Inc. v.
Martinez*, No. 07-cv-6907, 2008 WL 4619855, at *7 (S.D.N.Y. Oct.
17, 2008) (noting that "[w]hen more than one attorney and/or
other staff members such as paralegals renders legal services
for the same case, the court can use a single blended hourly
rate or separate rates for the contributions of each of the
legal practitioners their staff members").

    As set forth in his May 22, 2012 declaration, Mr.
Kalish is a partner at his firm and has been practicing
commercial and construction litigation for more than thirty
years.  (Kalish 5/22/12 Decl. ¶ 3.)  Mr. Spitalnik, who worked
on this matter closely with Mr. Kalish, has been admitted to
practice since 2006 and is a senior associate at Mr. Kalish's

firm.  (Kalish 6/6/12 Decl. ¶ 9.)  According to Mr. Levita,
defendant paid Mr. Kalish's firm based on a single blended rate
of $320 per hour in 2010, $330 per hour in 2011, and $340 per
hour in 2012.  (Levita 5/22/12 Decl. ¶¶ 2-3; Kalish 5/22/12
Decl. ¶¶ 4-5; Kalish 6/6/12 Decl. ¶ 8.)

          The court finds that in light of the attorney's
experience and other case-specific factors as articulated by the
Second Circuit in *Arbor Hill*, defendant's requested hourly rate
is not reasonable in this district.  Although, as noted above,
defendant's requested fee range of $320-$340 per hour might be
appropriate in this district for an experienced partner such as
Mr. Kalish, that rate is considered high for the work of a
senior associate, such as Mr. Spitalnik.  *See, e.g., Pilitz*,
2011 WL 5825138, at *4 (noting hourly rates of $300-$450 for
partners, $200-$300 for senior associates, and $100-$200 for
junior associates); *Crapanzano*, 2011 WL 2847448, at *2 (noting
hourly rates of $200-$350 for partners, $200-$250 for senior
associates with four or more years of experience, and $100-$150
for junior associates with one to three years of experience);
*Gutman*, 2009 WL 3296072, at *2 (approving hourly rates of $300-
$400 for partners, $200-$300 for senior associates, and $100-
$200 for junior associates).  Mr. Kalish's time records,
however, do not distinguish between work performed by himself
and the work performed by Mr. Spitalnik.  Nonetheless, given

20

that Mr. Kalish was intimately involved in virtually every
aspect of this case and that defendant agreed to and paid a
single blended rate for legal work in this matter (Kalish 6/6/12
Decl. ¶¶ 7-9; Levita 5/22/12 Decl. ¶¶ 2-3), the court will apply
a blended rate of $300 per hour, which represents a reasonable
upper limit of the prevailing rate for senior associates and a
reasonable lower limit of the prevailing rate for experienced
attorneys in this district. *See Jackson Hewitt Inc*., 2010 WL
5665033, at *3 (applying blended rate of $350 for partners and
$225 for associates where application did not provide names of
all attorneys who worked on the case, in light of prevailing
rates in the Eastern District); *see also Gutman*, 2009 WL
3296072, at *2 (approving hourly rates of $300-$400 for
partners, $200-$300 for senior associates, and $100-$200 for
junior associates in Eastern District).

### 2.   Hours Reasonably Expended

The court must next address whether the number of
hours expended by defendant's counsel was reasonable.[10]  A party
seeking attorney's fees "must support that request with
contemporaneous time records that show 'for each attorney, the
date, the hours expended, and the nature of the work done.'"
*Cablevision Sys. New York City Corp. v. Diaz*, No. 07-cv-4340,

---

[10] The court finds no merit in plaintiffs' unsupported assertion that the time
records attached to Mr. Kalish's May 22, 2012 declaration are not
contemporaneous.  (*See* Plffs. Opp. at 1-2.)

2002 WL 31045855, at *5 (S.D.N.Y. July 10, 2002) (quoting *Carey*,
711 F.2d at 1154); s*ee also Kingvision Pay-Per-View v. The Body
Shop*, No. 00-cv-1089, 2002 WL 393091, at *5 (S.D.N.Y. Mar. 13,
2002) (denying award of attorney's fees where information
regarding how the fees were accumulated was not provided even
though the requested amount was reasonable).

In determining the presumptively reasonable fee, a
court should adjust the hours actually billed to a number the
court determines to have been reasonably expended. *See Konits*,
409 F. App'x at 421. The number of hours claimed must be
"supported by time records [and not be] excessive or
duplicative." *LeBlanc-Sternberg v. Fletcher*, 143 F.3d 748, 756,
764 (2d Cir. 1998); *see also Hensley*, 461 U.S. at 434 (directing
district courts to exclude hours not "reasonably expended"). In
adjusting the number of hours, the court "must state its reasons
for doing so as specifically as possible." *LeBlanc-Sternberg*,
143 F.3d at 764 (internal quotation marks omitted).

As discussed previously, defense counsel spent 32
hours in 2010, 60.75 hours in 2011, and 18.50 hours in 2012
litigating defendant's first counterclaim, yielding a total of
111.25 hours spent on defendant's first counterclaim. (*See*
Kalish 5/22/12 Decl. ¶ 9.) According to Mr. Kalish, entries
that represented work on both the first counterclaim and "other
facets of the case" were discounted by varying percentages, and

22

so only a portion of the time spent on those entries was allocated to the first counterclaim and presented as the basis for the instant fee award. (*Id*. ¶ 4.)  Plaintiffs argue that defendant's requested number of hours should be reduced across-the-board by 20% to represent defendant's appropriate fee award for one out of its five counterclaims upon which summary judgment was granted.  (Plffs. Opp. at 1-2).

The court agrees that time spent on tasks related to both defendant's first counterclaim and other facets of this case should be reduced by 20% to reflect the fact that defendant was only permitted to seek fees for one out of five (or 20%) of its counterclaims. *See Kirsch v. Fleet St., Ltd.*, 148 F.3d 149, 173 (2d Cir. 1998) ("[T]he court has discretion simply to deduct a reasonable percentage of the number of hours claimed as a practical means of trimming fat from a fee application.") (internal quotation marks omitted).  Nevertheless, plaintiffs' request that *all* time spent by defense counsel be reduced by that percentage is inappropriate because the court identified 20 hours of time spent by defense counsel on tasks only related to defendant's first counterclaim.  (*See* Kalish 5/22/12 Decl., Ex. A at 18, 25, 32, 35, 48, 57, 61.)  The court will thus reduce the balance of defense counsel's requested hours to represent 20% of the total time spent on this case (meaning an 80% reduction), which the court believes is a reasonable estimate of

the time spent litigating defendant's first counterclaim as distinguished from its other four counterclaims and other aspects of this case, but will also award defense counsel the full 20 hours for tasks dedicated solely to defendant's first counterclaim.

Accordingly, out of the 353.5 hours in total spent by defense counsel on this case (*see* Kalish 5/22/12 Decl. Ex. A), the court will apply the 80% reduction in hours to 333.5 hours of counsel's time records (353.5 hours minus 20 hours). Therefore, the total number of hours for which fees will be awarded in connection with defendant's first counterclaim is 86.7 hours.[11]  After incorporating the rate and hour adjustments discussed above, the court awards defendant attorney's fees in the amount of $26,010.00.

The court will also grant defendant attorney's fees in an amount that reasonably represents the time spent responding to plaintiffs' June 26, 2012 sealed supplemental submission. After reviewing defendant's responsive submissions, comprised of new declarations by Mr. Kalish and Mr. Levita and which necessarily entailed a close review of the protected documents submitted under seal by plaintiffs on June 26, 2012, the court finds that four (4) hours is a reasonable amount of time for defense counsel to have spent preparing and filing defendant's

---

[11] (333.5 x .20) + 20 = 86.7.

submissions in response to plaintiffs' June 26, 2012 sealed supplemental submission.  Therefore, defendant's fee award will be increased by $1,200, to a total of $27,210.00.

   **B.   Costs**

        With respect to costs, "a court will generally award 'those reasonable out-of-pocket expenses incurred by attorneys and ordinarily charged to their clients.'" *Pennacchio v. Powers*, No. 05-cv-985, 2011 WL 2945825, at *2 (E.D.N.Y. July 21, 2011) (quoting *LeBlanc–Sternberg*, 143 F.3d at 763).  "The fee applicant bears the burden of adequately documenting and itemizing the costs requested." *Id.*

        Here, defendant requests a total of $1,508.15 in costs and disbursements, including the cost of taking the depositions of two of the individual plaintiffs, Robert and Jane Solomon, and has provided documentation of these expenses. (*See* Kalish 5/22/12 Decl. ¶ 9, Exs. B-C.)  This total represents 25% of the amount spent by defendant for costs and disbursements for this entire case. (*See id.*)

        Plaintiffs contend that the requested disbursement amount should actually be 20% (and not 25%) of the total amount spent, because defendant was only permitted to move for fees and costs in relation to on one out of five counterclaims. (Plffs. Opp. at 1.)  Under these circumstances, the court agrees that 20% (and not 25%) is the appropriate percentage of the total

25

amount of disbursements that should be awarded with respect to defendant's first counterclaim.  Thus, in light of the documentation submitted and after adjusting defendant's requested disbursement amounts, the court awards defendant the amount of $1,206.53 in disbursements and costs.

**CONCLUSION**

For the foregoing reasons, the court awards defendant $27,210.00 in attorney's fees and $1,206.53 in costs, for a total of $28,416.53, in connection with the grant of summary judgment on defendant's first counterclaim against plaintiffs.

**SO ORDERED.**

Dated:     Brooklyn, New York
           March 12, 2013


                                    _____/s/_____
                                    **KIYO A. MATSUMOTO**
                                    United States District Judge
                                    Eastern District of New York